IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PINNACLE PACKAGING COMPANY, INC.,** an Oklahoma corporation, **POLO ROAD LEASING, LLC**, an Oklahoma limited liability company, and **J. SCOTT DICKMAN**,<br><br>Plaintiffs,<br><br>v.<br><br>**CONSTANTIA FLEXIBLES GmbH**, an Austrian corporation, and **ONE EQUITY PARTNERS (EUROPE) GmbH**,<br><br>Defendants. | Case No. 12-CV-537-JED-TLW |

**DEFENDANTS CONSTANTIA FLEXIBLES GmbH'S AND ONE EQUITY PARTNERS (EUROPE) GmbH'S COMBINED BRIEF IN OPPOSITION TO PLAINTIFF PINNACLE PACKAGING COMPANY, INC.'S MOTIONS TO STRIKE OBJECTIONS, TO COMPEL DISCOVERY RESPONSES AND FOR EXPENSES AND FEES**

Defendants respectfully submit this brief in opposition to Plaintiffs' motions to strike objections and motions to compel.

As a threshold matter, the Court should refuse to hear Plaintiffs' motions based on Plaintiffs' failure to make a good faith effort to resolve the discovery disputes before seeking judicial intervention, as required by LCvR37.1. With respect to Plaintiffs' requests for production of documents, the first and only time the parties discussed Plaintiffs' concerns was on June 4, 2015 (at an unrelated meeting during which counsel were supervising the forensic inspection of Plaintiff Scott Dickman's recording device he surreptitiously used to record conversations with Constantia during negotiations). Defendants' counsel agreed to consider

{1384336;}

Plaintiffs' requests for additional production of documents. Exactly one week later, Plaintiffs filed motions to compel production without waiting to hear back from Defendants.

Plaintiffs' motions to compel further responses to its interrogatories are likewise premature under LCvR37.1. After initial discussions, Defendants supplemented their original responses to Plaintiffs' interrogatories and removed numerous objections in an effort to compromise and avoid burdening the Court with unnecessary motion practice. Rather than engaging in any further discussions with Defendants, however, Plaintiffs filed their motions. On that basis alone, the Court should refuse to hear this dispute.

The nub of this case concerns Plaintiffs' allegations of an oral agreement on a single phone conversation on July 25, 2012 during contract negotiations between the parties. It is undisputed that no contract was ever executed and therefore Plaintiffs rely upon alleged oral statements to claim that Defendants promised to repay Oracle's approximately $20 million indebtedness to Wells Fargo. Although the issue is relatively simple – and focuses on a limited date and time – Plaintiffs insisted on a discovery protocol which has involved Defendants having collected approximately 300,000 documents from at least 12 document custodians in 3 different countries. At great cost and expense, Defendants have complied with the stringent data policy requirements of Austria and Germany in gathering hundreds of thousands of documents to run search terms against and identify those responsive to Plaintiffs' requests. Plaintiffs have also propounded interrogatories to which Defendants have responded, and which Defendants then supplemented after a meet and confer with Plaintiffs' counsel.

Plaintiffs themselves only recently finished their production of documents including over 50 hours of audio recordings surreptitiously made by Mr. Dickman during the parties' contract negotiations.

Defendants have responded as fully as possible at this juncture to Plaintiffs' discovery requests, despite not yet having had the opportunity to review each of their approximately 5,000 produced documents (due largely to data protection restrictions) and Mr. Dickman's audio recordings. Clearly, Plaintiffs seek to pressure Defendants and lock Defendants in without Defendants' counsel having had the benefit of reviewing the vast majority of documents and discussing those documents with witnesses. Plaintiffs' tactics should not be countenanced.

Furthermore, Plaintiffs are attempting to use written discovery as a substitute for depositions. The detailed answers Plaintiffs seek are overly burdensome to provide in the form of interrogatory responses. However, Plaintiffs have taken no steps to secure depositions of Defendants. They assert that they need additional written discovery beyond the responsive answers already given by Defendants because it will be impossible to take depositions of Defendants in Austria and Germany. To the contrary, depositions of foreign defendants in Europe are commonplace in U.S. litigation. In fact, in an effort to facilitate such discovery, Defendants' counsel agreed over two months ago to waive the service requirements of the Hague Convention for Defendants' current employees and to accept service upon those party deponents Plaintiffs requested. Plaintiffs knew about the location of witnesses in Europe when they brought this case in 2012, and should not be rewarded for failing to avail themselves of the procedures for securing such depositions.

**BACKGROUND**

Defendants have made extraordinary efforts and progress on discovery to date. Defendants negotiated with Plaintiffs for months to agree on a detailed protocol to govern the exchange of electronically stored information ("ESI"), which sets forth, among other things, the time frame for the document retrieval, the custodians from whom documents would be collected,

the search terms to be applied, the metadata to be captured, the technical specifications for document productions and the format of privilege logs. Defendants sent the most recent draft to Plaintiffs on June 3, 2015, to which Plaintiffs have not responded and which is attached to the Declaration of John Russell ("Russell Decl." or "Russell Declaration") as Exhibit 1-A.

Despite that the ESI protocol has not yet been signed, Defendants proceeded on the assumption that a protocol in similar form would be executed. Pursuant to that understanding, Defendants collected approximately 300,000 documents from at least 12 different custodians in at least 3 different countries. Two of these countries – Germany and Austria – have strict data privacy regimes, which Defendants needed to understand and with which they needed to comply. Consequently, Defendants were required to prepare and obtain consents from document custodians, and had to take a number of steps to ensure that the collection, processing and review of data was in accordance with the law – including arranging for processing and review of nearly 10,000 documents in England, where such activities could be performed in accordance with the applicable data protection requirements, and redacting irrelevant information before exporting documents to the United States. Moreover, based on data protection issues, counsel for Defendants have had access to only a small volume of Defendants' documents. After the final document production to Plaintiffs, only then will counsel for Defendants have the ability to perform a detailed review of Defendants' documents.

After deduplication and application of the negotiated search terms in the ESI protocol, Defendants reviewed nearly 25,000 documents in 9 different languages: English, German, Danish, Portuguese, Spanish, Swedish, Turkish, Polish, and Russian. Of these documents, Defendants produced nearly 3,000 documents totaling over 12,000 pages. Defendants began producing these documents on a rolling basis, beginning on April 10, 2015, and have made a

total of 8 productions between April 10 and June 8. Defendants anticipate completing their production on Friday, June 19, with an additional production of approximately 1,800 documents. Further, as part of the review, Defendants have had to redact nearly 1,000 documents (both for privilege and for data protection reasons). Defendants have also produced two privilege logs listing over 1,000 documents, and will be producing a third privilege log.

In addition, Defendants have sought to accommodate Plaintiffs' requests for additional discovery wherever possible. Indeed, Defendants already have revised their responses to Plaintiffs' interrogatories once in response to Plaintiffs' counsel's requests. *See* Russell Declaration, Exhibit 1-B. On June 8, 2015, Defendants served revised interrogatory responses that provided additional information in response to a number of interrogatories and that removed a number of objections.

In short, Defendants have expended considerable time and resources to comply with Plaintiffs' discovery requests, and continue to do so.

## ANALYSIS

The majority of Plaintiffs' challenges to Constantia's and OEP Europe's discovery responses are duplicative and, as such, Defendants will respond to those common issues in a consolidated manner. For the remaining issues unique to either Constantia or OEP Europe, Defendants will address those issues individually.

### I. Plaintiffs' Failure to Meet and Confer

A party's failure adequately to meet and confer is a sufficient basis to deny a motion to compel. *See Johnson v. Old Rep. Ins. Co.*, Case No. 10-cv-460-JHP-FHM, 2012 U.S. Dist. LEXIS 66655, at *4 (N.D. Okla. May 14, 2012) (denying motion to compel based on filing party's failure adequately to meet and confer); *Dumas v. Allstate Ins. Co.*, Case No. CIV-06-405-

C, 2006 U.S. Dist. LEXIS 27286, at *1-2 (W.D. Okla. May 1, 2006) (striking motion to compel for failure to comply with Federal Rule 37 and Local Civil Rule 37.1); *Clincy v. Transunion Corp.*, Case No. 2:14-cv-00398, 2015 U.S. Dist. LEXIS 71411, at *3 (D. Utah June 2, 2015) (denying Rule 37 motion to compel where plaintiff did not sufficiently meet and confer prior to filing motion). Because Plaintiffs filed these motions without raising any concerns or engaging in any discussions about Defendants' revised interrogatory responses and after only a single meet and confer session regarding Plaintiffs' requests for production without waiting for revised responses, the motions should be denied.

## II. Plaintiffs' Interrogatories

### A. Interrogatories Seeking Identification of Documents

Plaintiffs' chief request is to have Defendants identify documents "that support, pertain to, or refer or relate to" Defendants' substantive responses to interrogatories. The final subpart of nearly every interrogatory requests that Defendants identify (according to Plaintiffs' definition of "Identify") documents that support the answer.[1] This Court has established that discovery requests like these, seeking "all documents referring to, concerning, relating to" a subject, are facially overbroad and improper. *See Perez v. El Tequila, LLC,* No. 12-CV-588-JED-PJC, 2014 WL 5341766, at *1 (N.D. Okla. Oct. 20, 2014) (citing *Aikens v. Deluxe Fin. Servs., Inc.,* 217 F.R.D. 533, 538 (D. Kan. 2003) (interrogatory is unduly burdensome on its face if it uses the omnibus terms "relating to" or "regarding" because it was so broad and open-ended that the defendant could not possibly fully determine which documents would be responsive without undue burden); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 197-98 (D. Kan. 1996) (interrogatory

---

[1] Although each Interrogatory is slightly different, each requests that Defendants identify "all" or "any" documents that "support," "pertain to" or "refer or relate to" a subject identified within the interrogatory.

rendered facially overbroad and unduly burdensome by use of the phrase "pertaining to," which that would require a party to engage in "mental gymnastics" to determine what information may or may not be responsive)).

Determining whether particular documents "support," "pertain to," or "refer or relate" to a specific interrogatory response also would impose a tremendous and unfair burden upon Defendants. Reviewing every document produced, including thousands of electronically-stored documents identified through a complex protocol negotiated by the parties, to identify each document that may support, pertain or relate or refer to a particular interrogatory response could take months to complete. In addition, if compelled to identify documents at this stage, before Defendants' counsel has an opportunity to fully review the documents, Defendants would need to continually update the responses as new facts are discovered and different legal theories come into focus.

Thus, Plaintiffs' motion to compel Defendants to engage in an arduous, time consuming and recurring effort to identify all documents at this time that "support," "pertain to," "refer or relate to" their interrogatory responses (Constantia Interrogatories 3, 5, 6, 8, 9, 10, 12 and 13; OEP Europe Interrogatories 1, 6 and 7) should be denied as facially overbroad, unduly burdensome and premature. Defendants would be willing to revisit Plaintiffs' request to identify documents, to the extent any exist, in response to Constantia Interrogatories 3, 5, 6, and 8 once discovery progresses and Defendants have had a reasonable time to review their own production, Plaintiffs' production, and third party productions.

### B. Interrogatories That Have Been Fully Answered

With respect to the interrogatories noted below, Plaintiffs seek to compel Defendants to revise their responses simply because Plaintiffs do not like the answers. These answers,

however, are not objectionable and, if necessary, could be supplemented as discovery progresses and Defendants have the opportunity to review all of the documents.

1. <u>Interrogatories Answered by Constantia</u>

   - <u>Interrogatory No. 3</u> requests that Constantia identify the "terms of the contract alleged in Your 11th Affirmative Defense." In its revised response, Constantia denies the existence of a contract. Constantia further states in the alternative that if the Court finds that there was an agreement, then any such agreement required Plaintiffs to provide Constantia with complete and accurate information in response to Constantia's request, which they did not do. Constantia answered this interrogatory based on the facts known to exist at this time.

   - <u>Interrogatory Nos. 5 and 6</u> request that Constantia identify each fraudulent misrepresentation that forms the bases of Constantia's 16th Affirmative Defense, namely, that Constantia discovered the value of Oracle was significantly less than Plaintiffs led Constantia to believe. In its revised responses, Constantia stated that Scott Dickman and Chris Payne conveyed EBITDA margin information for 2013 and 2014 to Richard Kelsey during a meeting that took place on July 13, 2012 that did not represent a complete picture of the actual EBITDA of the business. While Constantia answered fully based on information currently known, it believes other misrepresentations were made by Plaintiffs, and those misrepresentations will become known through further discovery.

   - <u>Interrogatory No. 8</u> requests Constantia's "understanding or belief" as to why Mr. von Hugo contacted Wells Fargo on July 31, 2012. In its revised response, Constantia stated that non-party Mr. von Hugo contacted Wells Fargo on or around July 31, 2012 to seek a 45-day extension of financing to Oracle to provide Constantia with time to conduct due diligence on Oracle. Constantia fully responded to this interrogatory based on the facts known to exist at this time.

   - <u>Interrogatory No. 9</u> requests that Constantia confirm its "understanding, belief, or contention" that to the extent Mr. von Hugo acted with respect to the Project, he was acting only for Constantia. In its revised response, Constantia confirmed that understanding and, thus, fully answered this interrogatory based on the facts known to exist at this time.

   - <u>Interrogatory No. 10</u> requests that Constantia identify all of the positions held by Mr. von Hugo at Constantia, by date, and identify the authority he had in connection with each position. The interrogatory further requested the reason why he ceased to occupy each position and the identity of his superiors or supervisors. Although Constantia stands on its objection that neither the reasons that Mr. von Hugo's position within Constantia changed nor the identities of his supervisors is relevant, in its revised responses, Constantia identified every position held by Mr. von Hugo during the relevant time frame, described his authority to bind

Constantia, and stated that he did not "report" to anyone during the relevant period. Constantia fully responded to this interrogatory.[2]

- Interrogatory No. 12 requests that Constantia confirm that Mr. von Hugo did not act on behalf of One Equity Partners LLC or OEP Europe in communications or in his dealings with Pinnacle and/or Oracle. Constantia confirmed this in its revised response and referred Plaintiff to the sworn affidavit of Mr. Judah A. Shechter that was attached to Defendants' Motion to Dismiss. Constantia fully responded to this interrogatory based on the facts known to exist at this time.

- Interrogatory No. 13 asks whether Constantia "was a participant at all in the Project," and seeks additional details about its participation in subsequent subparts. Although Constantia objected to the form of the interrogatory, in an effort to be cooperative, Constantia provided a summary of its involvement in discussions of a potential acquisition of Oracle, including its due diligence and its ultimate decision not to purchase Oracle. Constantia has fully responded to this interrogatory based on the facts known to exist at this time.

2. Interrogatories Answered by OEP Europe

- Interrogatory No. 1 requests that OEP Europe identify all of the positions held by Mr. von Hugo at OEP Europe, by date, and identify the authority he had in connection with each position, concluding with his resignation as managing Director in December 2012. The interrogatory further requested the reason why he ceased to occupy each position and the identity of his superiors or supervisors. Although OEP Europe stands on its objection that neither the reasons Mr. von Hugo's position within OEP Europe changed nor the identities of his supervisors is relevant, OEP Europe revised its answer to identify every position held by Mr. von Hugo during the relevant time frame, describe his authority to bind OEP Europe, and explain that he did not "report" to anyone during the relevant period. OEP Europe fully responded to this interrogatory.

- Interrogatory No. 4 asks whether Mr. von Hugo acted on OEP Europe's behalf "at any time in any Communication or action with respect to Pinnacle and/or Oracle." The interrogatory further requests that OEP Europe identify the "nature" and "content" of same, and identify to whom he reported when he made such Communication or took such action. OEP Europe confirmed that Mr. von Hugo did not act on OEP Europe's behalf in connection with the allegations raised by Plaintiffs in the Second Amended Complaint. OEP Europe fully responded to this interrogatory based on the facts known to exist at this time.

---

[2] Further, without any demonstrated need for this information, the Court should not require the production of information from a personnel file, particularly given potential implications under foreign data privacy laws. *See* Russell Decl. Ex. 1-C (*Trusz v. UBS Realty Investors LLC*, Case. No. 3:09-cv-268 (JBA) (D. Conn. Jan. 22, 2010) (Dkt. No. 85)).

- <u>Interrogatory No. 5</u> requests that OEP Europe identify any "agreement[s]" it made with Pinnacle and/or Oracle. OEP Europe objected to this interrogatory as vague, but after a meet and confer, provided a revised response stating that OEP Europe did not make any agreement with Pinnacle and/or Oracle with respect to the debt owed by Oracle to Wells Fargo. OEP Europe fully responded to this interrogatory.

- <u>Interrogatory No. 6</u> requests that OEP Europe state its "understanding or belief" as to why Mr. von Hugo contacted Wells Fargo on July 31, 2012. OEP Europe objected to the Interrogatory as calling for speculation (as Mr. von Hugo was not acting on OEP Europe's behalf) and as seeking information neither relevant nor likely to lead to the discovery of admissible evidence. OEP Europe stands on its objections.

- <u>Interrogatory No. 7</u> requests that OEP Europe state its "understanding, belief or contention" that Mr. von Hugo was acting only on behalf of Constantia with respect to the Project. In its revised responses, and subject to its original objections, OEP Europe stated that Mr. von Hugo was not acting on behalf of OEP Europe in connection with the allegations raised by Plaintiffs in the Second Amended Complaint. OEP Europe has fully responded to this interrogatory based on the facts known to exist at this time.

- <u>Interrogatory No. 8</u>, like Interrogatory No. 13 to Constantia, requests that OEP Europe state whether it was a participant at all in the Project and requested additional details about such participation in subsequent subparts. Although OEP Europe objected to the form of the interrogatory, in an effort to be cooperative, OEP Europe again stated that it was not involved in the alleged facts at issue in the Complaint. OEP Europe has fully responded to this interrogatory based on the facts known to exist at this time.

### C. Objections in Interrogatory Responses

Plaintiffs request that this Court strike Defendants' specific objections that were included in Defendants' individual responses to Plaintiffs' interrogatories. This request should be denied because it is premature, and Defendants' objections are valid and necessary to preserve their rights.

Plaintiffs purportedly seek removal of Defendants' objections so that *if* this case goes to trial – currently scheduled for *mid-2016* – the objections need not be read to the jury. Plaintiffs cite no cases to support their position that a motion to strike in this instance is appropriate, nor do they provide support for its position that Defendants are required at this stage of the litigation, in

{1384336;}                                      10

the middle of discovery, to waive their objections for a potential trial one year from now. To the contrary, courts in the Tenth Circuit and other circuits have refused similar requests to require parties to remove their objections. *See White v. Deere & Co.*, Civil Action No. 1:13-cv-02173-PAB-NYW, 2015 U.S Dist. LEXIS 35785, at *26-27 (D. Colo. Mar. 23, 2015) (refusing to order further interrogatory responses on two interrogatories where Plaintiffs' moving papers only objected to the general objections, not the substance of the responses); *see also Calder v. Blitz U.S.A., Inc.*, No. 2:07-cv-387-TC-PMW, 2010 WL 2639971, at *3 (D. Utah June 28, 2010) ("Even though Blitz provided substantive responses to both Interrogatory Nos. 3 and 21, Plaintiff also presents arguments with respect to the general objections Blitz included in its responses to those interrogatories. The court has determined that it is unnecessary to address the merits of those arguments and objections. In the court's experience, it is commonplace for parties responding to discovery requests to include general objections along with their substantive responses as a way of avoiding possible waiver of those objections."); *Tango Transport, L.L.C. v. Transport Int'l Pool, Inc.*, Civil Action No. 08-0559, 2009 WL 2390312, at * 3 (W.D. La. July 31, 2009) ("Regarding Tango's complaints pertaining to TIP's objections to Interrogatory Nos. 2, 3, 4, 5, 7, 8, 9, 10, Tango appears to take issue only with the presence of the objections, which it contends were waived based on TIP's untimely responses and should be removed, and not with the substance of the answers TIP provided. Given that Tango makes no argument as to how the answers are substantively inadequate, Tango's motion to compel in this regard is DENIED.")

Moreover, in response to the concerns Plaintiffs initially raised about Defendants' specific objections, Defendants removed certain specific objections from their amended interrogatory responses. The remaining specific objections are appropriate and well-founded. By way of example only, Interrogatory No. 10 to Constantia asked far-reaching questions about

Christopher von Hugo's employment, including the positions he had while employed by Constantia and "his authority in each position and limitations thereon, including without limitation financial or monetary limitations." Constantia objected to the phrase "his authority in each position and limitations thereon," on the grounds that it was vague and ambiguous. Constantia further informed Plaintiffs that it would construe such language to mean "financial or monetary limitations." Constantia is entitled to preserve its objection to Plaintiffs' vague terms. The remainder of Defendants' specific objections to the interrogatories are likewise valid and appropriate.

### III.  Plaintiffs' Requests for Production of Documents

Plaintiffs challenge Defendants' objections to a handful of requests for production, but articulate no legitimate basis for obtaining the documents. Although the parties had not completed their required negotiation of the issue when the motion was filed, Defendants will address Plaintiffs' motions.

#### A.  OEP Europe's Responses to Plaintiffs' Requests

Plaintiffs move to compel documents from OEP Europe in response to Request for Production Nos. 28, 31 and 32, but nowhere in Plaintiffs' motion or supporting brief do they identify any purported deficiency in OEP Europe's responses to these document requests. Indeed, the brief in support of this motion discusses only interrogatories. The Court therefore should summarily deny Plaintiffs' motion as it relates to OEP Europe's responses to requests for production of documents. In any event, the requests – which seek public offering documents, telephone and cellular phone records, Chris von Hugo's employment documents and "website listing" – improperly seek documents (1) in the public domain, *see McKellips v. Kumho Tire Co., Inc.*, Case No. 13-cv-2393-JTM-TJJ, 2015 WL 1706564, at *24 (D. Kan. Apr. 15, 2015) ("It is

Case 4:12-cv-00537-JED-TLW   Document 107 Filed in USDC ND/OK on 06/18/15   Page 13 of 16

well established that discovery need not be required of documents of public record which are equally accessible to all parties."), and/or (2) not shown to be relevant to the issues in the case, *see Aircraft Fueling Sys. v. Southwest Airlines Co.*, Case No. 08-CV-414-GKF-FHM, 2011 U.S. Dist. LEXIS 119603, at *5 (N.D. Okla. Oct. 17, 2011) ("Rule 26(b), although broad has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (internal citation omitted).

### B. Constantia's Responses to Plaintiffs' Requests

Plaintiffs take issue with Constantia's responses to Request for Production of Documents Nos. 27 and 30 after first airing their concerns at the 4 June inspection of Plaintiff Dickman's recordings. As noted above, Plaintiffs' premature filing is sufficient to deny the motion. *See supra* at [5-6]. Defendants nevertheless respond to the arguments set out in Plaintiffs' brief.

- Request for Production No. 27 to Constantia seeks "[a]ll documents, including but not limited to, those like a 10-K, prospectus, or similar thing" used in connection with a public offering of securities or bonds, which "refer or relate in any way to Pinnacle, Oracle or this lawsuit." Constantia objected to this request because, among other things, the documents are publicly available and Plaintiffs' use of the phrase "similar things" renders the request vague and ambiguous. Despite that this request seeks documents in the public domain, Defendants would have considered some reasonable set of responsive documents had negotiations occurred before the motions were filed.

- Request for Production No. 30 to Constantia seeks "documents sufficient to show the date of and Your most recent ownership that was different from and prior to that shown in the corporate disclosure filed herein on November 8, 2012. Constantia understands from the parties' meet and confer session that Plaintiffs want to know whether Constantia's ownership on the date of the corporate disclosure statement was the same ownership during the time of the events at issue in Plaintiffs' complaint. This is not the proper subject of a document request. Rather, Plaintiffs can serve an interrogatory asking that same information. Constantia should not be burdened with collecting and producing documents relating to its ownership prior to the events at issue in this lawsuit simply to show a change in ownership during an irrelevant period.

{1384336;}　　　　　　　　　　　　　　　　　　　13

### IV. Plaintiffs Misstate the Restrictions on Depositions in Europe

Plaintiffs incorrectly assert that their interrogatories are appropriate because they are unable to take Rule 30 depositions due to the foreign location of Defendants' principals, and that any process to obtain foreign testimony is limited to submitting written questions to a foreign judge to ask. American-style depositions of foreign defendants in foreign countries occur in U.S. litigation on a regular basis. "There is a presumption that the deposition of a corporation should be taken at its principal place of business, especially when the corporation is a defendant." *Tile Unlimited, Inc. v. Blanke Corp.*, No. 10 C 8031, 2013 WL 2451143, at *1 (N.D. Ill. June 5, 2013) (granting protective order where Plaintiff noticed German defendant's 30(b)(6) deposition in Chicago) (citation omitted). "Indeed, insofar as a foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, *the presumption that the deposition should occur at a foreign defendant's place of residence may be even stronger*." *Id*. (emphasis added). Courts can and do order plaintiffs to depose European defendants, including those in Austria and Germany, in Europe for purposes of U.S. litigation. In fact, in *Tile Unlimited*, the court rejected the same argument that Plaintiffs make here that "taking a 'U.S. style' deposition in Germany with all attorneys present in Germany is illegal." *Id*. at *2. The Court stated that there "appears to be a process for legally taking U.S.-style depositions in Germany with some requirements and arrangements." *Id*. at *2. Similarly, courts have ordered depositions of Austrian defendants to occur in Austria. *See Baker Hughes Inc. v. Homa*, Civil Action No. H-11-3757, 2013 WL 684699, at *2 (S.D. Tex. Feb. 25, 2013) (ordering plaintiffs to "submit new deposition notices with dates, times, and locations coordinated with the Austrian Defendants and the Austrian Court" and holding that the Austrian defendants must present their witnesses, both individual and

30(b)(6), for deposition in Vienna to occur "pursuant to the Federal Rules of Civil Procedure"). Plaintiffs have not cited any cases to the contrary.

In short, Defendants' foreign witnesses are far more accessible than Plaintiffs claim. Defendants agreed to waive time-consuming and costly service of deposition notices pursuant to the Hague Convention for depositions of the German and Austrian residents who are currently employed by the parties. In January 2015, Defendants specifically informed Plaintiffs that there would be foreign law issues to resolve, and Defendants explicitly informed Plaintiffs at least two months ago that Plaintiffs would need to comply with Austrian or German law requirements to secure depositions in those countries, because Defendants could not waive those foreign law requirements. Plaintiffs chose not to take any action to secure those depositions, and any urgency in obtaining further discovery is therefore a situation of Plaintiffs' counsel's own making.[3]

## CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court deny Plaintiffs' motions to compel and to strike objections. Under the circumstances of this case, Plaintiffs are not entitled to any fees or costs for bringing these motions, and they cite no authority to support that position in this case.

---

[3] Notably, in *January 2015*, Defendants requested a discovery cutoff of December 1, 2015, precisely because there were multiple foreign law issues with which the parties would have to comply. Plaintiffs opposed Defendants' request and proposed a discovery cutoff date of "4 Months of Discovery Unless Extended by the Court for Good Cause." Joint Status Report, Doc. 91. Plaintiffs should not now be permitted to impose undue hardship on Defendants as a result of Plaintiffs' own neglect in learning about the foreign law requirements.

| | |
|---|---|
| Dated: 18 June 2015 | s/John D. Russell |
| | John D. Russell, OBA No. 13343 |
| | GABLEGOTWALS |
| | 1100 ONEOK Plaza |
| | 100 W. Fifth Street |
| | Tulsa, OK  74103 |
| | Telephone: (918) 595-4800 |
| | Facsimile: (918) 595-4990 |
| | *jrussell@gablelaw.com* |
| | |
| | Marshall Fishman, *Pro Hac Vice* |
| | Gabrielle Gould, *Pro Hac Vice* |
| | Cheryl Howard, *Pro Hac Vice* |
| | Aaron Lang, *Pro Hac Vice* |
| | Freshfields Bruckhaus Deringer US LLP |
| | 601 Lexington Avenue, 31st Floor |
| | New York, NY 10022 |
| | Telephone (212) 277-4000 |
| | Facsimile (212) 277-4001 |
| | *marshall.fishman@freshfields.com* |
| | *gabrielle.gould@freshfields.com* |
| | *cheryl.howard@freshfields.com* |
| | *aaron.lang@freshfields.com* |
| | |
| | **COUNSEL FOR DEFENDANTS** |

## **CERTIFICATE OF MAILING**

I hereby certify that on 18 June 2015, I electronically transmitted the foregoing pleading, to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Laurence L. Pinkerton - *pf@att.net*
**COUNSEL FOR PLAINTIFFS**

        s/John D. Russell
        John D. Russell