# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PINNACLE PACKAGING COMPANY, INC., an Oklahoma corporation, POLO ROAD LEASING, LLC, an Oklahoma limited liability company, and J. SCOTT DICKMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>CONSTANTIA FLEXIBLES GmbH, an Austrian corporation, and ONE EQUITY PARTNERS (EUROPE) GmbH,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 12-CV-537-JED-TLW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## RESPONSE OF PLAINTIFFS TO DEFENDANTS CONSTANTIA FLEXIBLES GmbH's AND ONE EQUITY PARTNERS (EUROPE) GmbH's <u>MOTION FOR PROTECTIVE ORDER</u>

Plaintiffs, Pinnacle Packaging Company, Inc., Polo Road Leasing, LLC, and J. Scott Dickman ("Plaintiffs"), hereby respond to *Defendants Constantia Flexibles GmbH's and One Equity Partners (Europe) GmbH's Motion for Protective Order* (the "Motion").

### STATEMENT OF FACTS

1. The Defendant, Constantia Flexibles GmbH, is an Austrian corporation. Austria has not subscribed to any portion of the Hague Convention. The Defendant, One Equity Partners (Europe) GmbH, is a German corporation. Germany has subscribed to the Hague Service Convention and Hague Evidence Convention.[1]

---

[1] "The Provisions under the Hague Convention and the actions of the German authorities pursuant thereto, are in patent conflict with the Federal Rules of Civil Procedure and the rights which these rules grant to all litigants, including this plaintiff." *In re Anschuetz & Co.*, 754 F.2d 602, 613-614, 1985 A.M.C. 2705, 53 USLW 2458, 1 Fed.R.Serv.3d 645,

2. Plaintiffs sent an email on April 2, 2015, to counsel for Defendants, Gabrielle Gould, that is attached to the Declaration of John Russell filed with the Motion. This email addressed taking depositions in Europe, in the hopes there would be an offer of voluntary cooperation by the Defendants, *e.g.*, "though advice from you may affect [depositions in Europe] and affect scheduling." The attitude of Defendants to cooperate on potential depositions in Europe was reflected by the fact that no response was made to this email. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 2.

3. On April 9, 2015, Plaintiffs first raised with Defendants the issue that Plaintiffs had not been provided in Defendants' Rule 26 disclosures with the addresses of the potential foreign witnesses of the Defendants. After numerous contentious discussions the Defendants finally indicated the cities of residence, but made no other concessions until on May 22, 2015 Defendants provided dates of birth of certain of the foreign individuals, which Defendants represented was necessary to assist with respect to the following necessary steps under foreign law to go forward with depositions. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 3.

4. Defendants initially made no concessions on the taking of depositions in Europe. This left Plaintiffs confronting the Hague Convention for the German Defendant and one of the two key Defendant witnesses in the case, Christopher von Hugo, who no longer holds positions with either Defendant. In addition, Austrian procedures are even more cumbersome as it is not a signator to the Hague Convention. *See* Declaration of J. Scott Dickman, Exhibit A hereto at ¶¶ 6-7, and ¶¶ 9-11 herein. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 4.

5. After their failed email suggestion on European depositions, Plaintiffs performed the steps necessary to ascertain the requirements for foreign depositions, and found the extreme difficulty posed as set forth in paragraphs 9-11, below. Plaintiffs also did legal research and provided to Defendants on April 22, 2015 the case of *In re Honda American Motor Co., Inc.*

*Dealership Relations Litigation*, 168 F.R.D. 535 (D.Md. 1996), which is discussed herein and compelled foreign witnesses to attend depositions in the United States. Defendants rejected this submission and provided a citation in support of their argument that the depositions had to take place on foreign soil. Exhibit B, Declaration of Laurence L. Pinkerton, Exhibit B-1, thereto. No other concession was mentioned. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 5.

      6.      In a conference call on or about June 5, 2015, Plaintiffs indicated their intention to issue notices of deposition to be held at the offices of Defendants' counsel in New York, New York for Thomas Unger ("Unger") as a managing agent of Constantia, and 30(b)(6) notices for the depositions of the Defendants, Constantia and One Equity Partners (Europe). Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 6.

      7.      Defendants made no concessions upon this indication. Plaintiffs then raised their inability to take foreign depositions in their motion to compel [DKT 101] filed on June 11, 2015. In their response on the motion to compel [DKT 107] the Defendants, on June 18, 2015, presented this cryptic statement:

> In short, Defendants' foreign witnesses are far more accessible than Plaintiffs claim. Defendants agreed to waive time-consuming and costly service of deposition notices pursuant to the Hague Convention for depositions of the German and Austrian residents who are currently employed by the parties. In January 2015, Defendants specifically informed Plaintiffs that there would be foreign law issues to resolve, and Defendants explicitly informed Plaintiffs at least two months ago that Plaintiffs would need to comply with Austrian or German law requirements to secure depositions in those countries, because Defendants could not waive those foreign law requirements.

Despite the conduct of a Rule 37 conference on the Motion, Defendants have put nothing in writing concerning this purported "concession," either prior to or after their response brief, and Plaintiffs were unaware of it prior to receiving the response brief on the motion to compel. Rule 29 of the Federal Rules of Civil Procedure allows a stipulation on depositions, but Defendant have proposed

nothing since Plaintiffs' initial inquiry on April 2, 2015. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 7.

8. On June 12, 2015, Plaintiffs served notices for a Rule 30(b)(6) deposition of One Equity Partners (Europe) and for Unger, as a managing agent of Constantia, and on June 15, 2015, a notice for a Rule 30(b)(6) deposition of Constantia was served. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 8.

9. The taking of a deposition in Austria without agreement is virtually impossible and if achieved would be very costly. Crowe Foreign Services ("Crowe") was used by Plaintiffs to secure service of process in this case. Crowe states the following for a non-Hague Convention state like Austria:

> <u>For letter rogatory only (non Convention countries)</u>: This method requires State Dept facilitation and the requisite fees for this have increased (as of July 13, 2010) to $2,275. We charge a $50 fee to provide this payment because it is required that the payment be in the form of a bank cashier's check, issued at the time that the documents are forwarded for service. Therefore, the amount of $2,325 would be payable to **Crowe Foreign Services**. *This is in addition to the fee above*.
>
> <u>LANGUAGE</u>: The language of the deposition, and any produced evidence, will be in the official language of the foreign country. If that language is not English, translation of all documents going to be foreign country is required. Our fees for translation vary from language to language (generally between $60-$85/pg, based on an average of 250 word page). Additional costs are incurred for English translation of any provided transcripts/other evidence produced. It will also be necessary for you to pay for/provide interpreters at deposition sessions if you are permitted to attend and do not speak the language. If you require any special services, such as court reporter or interpreter, we can provide them. Fees are quoted upon request.
>
> Once the request leaves the United States, the foreign authorities will have complete control of the remaining procedures, scheduling, notifying the participants of the details, etc., and this can take anywhere from 3 to 6 months or more to complete, depending upon the country. Because of this, our office can provide a detailed affidavit that can be used to support a motion to extend discovery deadlines, if necessary. In addition, it may be prudent *in certain countries* to retain local counsel in the destination county to assist, and even attend the deposition on your behalf. Having foreign counsel present can often allow you to participate through them if you

> are denied permission to participate yourself.  If you are interested in this option and would like our assistance, we have counsel in most foreign destinations willing to assist in these matters.  But keep in mind that this option is very expensive and needs to be decided in advance because foreign counsel's requested presence should be included in the initial Evidence Request.

See the Declaration of J. Scott Dickman, at ¶ 6.

10.     This dismal outlook continues for Germany where Christopher von Hugo is located as shown by the excerpt below from the *ABA Section of International Law Newsletter*, Issue 7, September 2013:

> Taking depositions of witnesses in Europe is quite different from taking depositions in the U.S.  The Hague Evidence Convention, which applies to the taking of depositions in most European countries, imposes restrictions on where depositions can take place, and whether a foreign court will be involved.  Germany has signed the Convention, but has entered special reservations for the taking of depositions in Germany.  For example, voluntary depositions must be taken at the U.S. Consulate in Frankfurt, but an unwilling witness must be examined by a German judge in the courtroom.  In Germany, only non-parties testify as witnesses and the scope of questioning is very narrow.
>
> Depositions of an unwilling witness require the filing of a letter of request with one of the sixteen German "Central Authorities."  Once the Central Authority has determined that the request complies with the Hague Convention, the Central Authority will forward the request to one of the local courts for execution.  The judge commissioned to examine the witness will rely on a list of questions provided by the attorneys.  Afterwards, the party attorneys may ask follow-up questions.  There is no court reporting, no video recording and no cross-examination.  The judge summarizes the testimony at the conclusion of the testimony.  The judge is in control of the process (§§ 380, 390 ZPO (German Civil Procedure Rules)), and has arrest authority for a witness who refuses to testify.

Exhibit A, Declaration of J. Scott Dickman, ¶ 7.  This view is supported by the website of the Consulate General of the United States in Frankfurt, Germany.  Exhibit A, Declaration of J. Scott Dickman, ¶ 8.

11.     Constantia and its CEO, Unger, have extensive U.S. contacts.  Constantia has at least five U.S. subsidiaries:  Constantia Blythewood LLC, Blythewood, SC; Constantia Colmar LLC,

Colmar, PA; Constantia Flexibles Sales, LLC, Wall, NJ; Printer Labels, Inc., Ontario, CA; and Spear USA, Inc., Fulton, NY.  Unger is a member of the Management Board of Constantia and is its Chief Executive Officer.  In addition to serving these five subsidiaries, Unger also acts directly as Chief Executive Officers for Global Packaging USA Corporation, which has as a listed address of 701 Brickell Ave., Suite 2010, Miami, FL, United States, 33131.  Exhibit A, Declaration of J. Scott Dickman, ¶¶ 3-4.  While noticed for deposition in New York, NY, Plaintiffs ask the Court to consider an alternate location for Unger's deposition, and Constantia's 30(b)(6) deposition, to be Miami, FL.  Exhibit A, Declaration of J. Scott Dickman, ¶ 4.

12. Unger is fluent in English, and is believed to travel frequently to the United States in fulfillment of his corporate duties.  Declaration of J. Scott Dickman, ¶¶ 3-4.

13. Christopher von Hugo represented at least One Equity Partners (Europe) in these proceedings, as shown by his business card which he presented in the United States, and the numerous subsequent references to "OEP" that were reflected in the record on the motion to dismiss. [DKTs 57 and 57-1]  One Equity Partners (Europe) is an international financial concern whose members are believed to travel to New York.  Exhibit A, Declaration of J. Scott Dickman, ¶ 5.

14. There is good reason to believe that the Court's supervision will be required during the depositions wherever they are held.  Defendants, and perhaps even newly retained outside counsel for Unger, may be anticipated to interrupt with regard to issues of foreign law.  There is no federal judge or magistrate available in Europe to respond to such disputes.  Further, the necessity in this case for the previous motions to compel filed by Plaintiffs [DKT 101, DKT 103], following Rule 37 conferences and supplemental answers by Defendants, shows the inclination of the Defendants not to fully comply with discovery under the Federal Rules of Civil Procedure, as spurious objections were continued in their discovery responses along with incomplete answers. This gives rise to a presumption that objections even under the Federal Rules of Evidence may need

a resolution by an available federal judge or magistrate in the depositions which will be virtually impossible, if the deposition are held in Europe. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 10.

15.     In all three Rule 37 conferences, the Defendants have proceeded with three attorneys being present. It is reasonable to deduce from this fact that Defendants will send no less than two attorneys to Europe for depositions. This counterbalances the expenses that may be incurred by causing two witnesses to travel to the United States for depositions, as Unger can serve as the 30(b)(6) deponent for Constantia. Alternatively, Constantia may send a different designee, though no one could contend that such designee would have as much information as Unger. In proceeding with depositions in the United States as noticed, Plaintiffs do not intend to take additional depositions in Europe. If the depositions are forced to Europe, then Plaintiffs would also seek two additional depositions beyond the three noticed. This further increases expenses in Europe for all parties. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 11.

16.     The time difference in Frankfurt, Germany and Vienna Austria of 6 hours makes it virtually impossible for this Court to supervise disputes in the depositions, if they are conducted in Europe. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 12.

**I.      THE PROTECTIVE ORDER SHOULD BE DENIED AND THE DEPOSITIONS CONDUCTED AS NOTICED IN NEW YORK CITY, OR IN MIAMI, FLORIDA FOR UNGER AND CONSTANTIA.[2]**

    **A.      Defendants Fail to Meet Their Burden of Proof for a Protective Order.**

The decision to enter Defendants' requested protective order is within the discretion of the Court. *Thomas v. IBM*, 48 F.3d 478, 482 (10th Cir. 1995). The Defendants, however, have the

---

[2] Plaintiffs tender Miami, FL for Unger's deposition and Constantia's Rule 30(b)(6) deposition. *See* Statement of Facts, ¶ 11.

burden to show good cause for the protective order. *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 256 (D.Kan. 1996). A showing of good cause requires the Defendants to submit a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n.16, 101 S.Ct. 2193, 68 L.Ed. 693 (1981). In the Motion the Defendants make no such showing, rather, they simply argue in favor of a legal presumption.

A further crucial flaw in the Defendants' showing on the Motion is their failure to establish Tenth Circuit precedent for the rule that Defendants urge: Plaintiffs must show "peculiar circumstances that warrant a departure from the general presumption that the noticed 30(b)(6) depositions as well as that of the deposition of Constantia's managing agent, Thomas Unger, be conducted at the residence or principal place of business." (Motion, p. 4). In support of that argument, Defendants merely cite to *In re Joseph Walker & Co., Inc.*, 472 B.R. 696 (B.S.C. 2012). This is a South Carolina bankruptcy court that is not precedential for this Court.

Defendants further argue that this initial presumption "carries extra weight where the defendant is a foreign corporation." In support of that proposition, the Defendants' citation is "*See Tile Unlimited, Inc. v. Blanke Corp.*, No. 10 C 8031, 2013 WL 2451143, at \*1. N.D.Ill. June 5, 2013." *Tile* actually qualifies this by saying, "the presumption that the deposition should occur at a foreign defendant's place of residence **may be** even stronger." *Outsidewall*, *supra*, at 471 (emphasis added). Moreover, *Tile* is far from being a precedential case for this action. The district court's ruling was in circumstances where *in personam* jurisdiction over the defendants had not been established, as exists in this case. *Id*. *Tile* is further recognized in the Motion as quoting *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D.Va. 2010) (Motion, at 4). In that case no final decision was rendered, and the case was remanded for further consideration by a magistrate judge

-8-

who had ordered the foreign depositions to be conducted in the United States, but the remand was to consider further proceedings consistent with principles established in the case.

In sum, the Defendants have wholly failed to meet their burden of proof, and should not be permitted to try to resuscitate their Motion by raising arguable new facts in reply.

### B. Solid Factual and Legal Grounds Exist to Deny the Motion for Protective Order.

Plaintiffs initially ground their contested deposition notices on the fact the Federal Rules of Civil Procedure do not specify a location for a party's deposition noticed pursuant to Rule 30(a)(1) or 30(b)(6) as recognized by *Outsidewall*, *supra*, at 470 (Defendant's authority). Under this regime:

> When a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made. **Under such facts, the foreign corporation's agents are frequently compelled for deposition on American soil.** *See In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 541–42 (D.Md.1996) (requiring agents of a Japanese corporate defendant to be deposed in Maryland); *M & C Corporation v. Erwin Behr GmbH & Co.*, 165 F.R.D. 65, 68 (E.D.Mich.1996) (requiring a German corporate defendant's agents to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*, 1992 WL 212602, *2 (N.D.Ill.1992) (requiring depositions of Dutch and Australian defendants in Chicago); *Roberts v. Heim*, 130 F.R.D. 430, 439–40 (N.D.Cal.1990) (compelling the appearance of a Swiss defendant for deposition in San Francisco). **The bottom line is that a foreign corporation, subject to the in personam jurisdiction of this court, can be ordered under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony**. *Work v. Bier*, 106 F.R.D. 45, 52 (D.D.C.1985).

*Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D.Ind. 2000) (emphasis added). A similar string citation of cases where foreign parties were compelled to give depositions in the United States appears in *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F.Supp.2d 525, 529 (D.N.J. 2009), which adds the following cases to the list given above: *See, e.g., Calixto v. Watson Bowman Acme Corp*., No. 07–60077, 2008 WL 4487679, at *3 (S.D.Fla. Sept. 29, 2008) (Swiss

resident ordered to appear for deposition pursuant to the Federal Rules); *Int'l Ins. Co. v. Caja Nacional De Ahorro Y Seguro*, No. 00–6703, 2004 WL 555618 (N.D.Ill. Mar. 18, 2004) (deposition of representative of Argentine entity to occur in the United States); *Triple Crown Am., Inc. v. Biosynth* AG, No. 96–7476, 1998 WL 227886, at *4 (E.D.Pa. Apr. 30, 1998) (ordering depositions of Swiss corporation's agents occur in Pennsylvania); *Ward–THG, Inc. v. Swiss Reinsurance Co.*, No. 96–8100, 1997 WL 83294, at *1 (S.D.N.Y. Feb. 27, 1997) (depositions of Swiss nationals to occur in the United States). All of these cases support Plaintiffs' notices, and stand against a protective order.

Before attempting to apply any further standard, it is important to assess the status of the depositions as noticed, and any reasonable potential for them to be conducted in Germany and Austria. As noted above in ¶¶ 4-7 of the Statement of Facts, Defendants profess to have lessened the burden on the Plaintiffs with respect to depositions in Austria and Germany, but they continue in their quoted statement to rely upon and assert the foreign law in their countries, while ignoring that they have submitted themselves to the jurisdiction of this Court and have used the Federal Rules of Civil Procedure to their benefit.

Defendants' "concession" is contradicted in the first instance by their failure in the Rule 37 conference to proffer a specific stipulation under Rule 29, but it is completely undercut by the case of *In re Vitamin Antitrust Litigation*, 2001 WL 35814436, *7 (D.C. Dist. of Col. 2001), where the court refused to be seduced by representations of defense counsel claiming to cooperate in German depositions beyond what is purportedly offered in the Defendants' "concession" here. The court stated:

> As to Germany, plaintiffs submitted materials of the U.S. Consulate General in Frankfurt, Germany, that detail the steps that must be taken to conduct voluntary depositions within Germany's borders. Plaintiffs also submitted a letter from a State

Department official in Washington, D.C., William F. Daniels, that supports plaintiffs' contentions that German discovery procedures apply to depositions notwithstanding the Court's June 20, 2001, Order specifying that merits discovery be taken under the Federal Rules rather than the Hague Convention. Mr. Daniels's letter states, in relevant part:

> "a U.S. court order which provides that overseas discovery of citizens and foreign nationals in Germany [is] to be conducted under the U.S. Federal Rules of Civil Procedure[ ] does not override or invalidate the German government's procedures which are set forth in the U.S. Consulate General–Frankfurt's website [ ]. Specifically, German law requires that any "U.S.-style" depositions of individuals in Germany be administered by the U.S. Embassy or Consulate, etc., and are not superseded by any U.S. Court order that depositions be conducted under the Federal Rules. It has long been the State Department's understanding of German law that private litigants cannot simply take depositions on their own of foreign nationals in Germany—even if there is a U.S. court order that depositions be made under the Federal Rules."

Plaintiffs also submitted a Declaration of Joachim Zekoll, who states:

> "even with an order from this Court requiring that discovery proceed under the Federal Rules of Civil Procedure, plaintiffs will violate German law if they conduct Federal Rules depositions of German nationals in Germany without following the procedures set forth in the [Hague] Evidence Convention or other diplomatic agreements. * * * The procedures set forth in the Evidence Convention and on the U.S. Consulate General–Frankfurt's website are part of German domestic law, and offer the exclusive means by which plaintiffs lawfully may take depositions of German nationals within Germany for use in U.S. legal proceedings. [footnote omitted]"

Finally, plaintiffs submitted a Declaration of John J. Rosenthal, an attorney representing one of the plaintiffs in this action, which sets forth Mr. Rosenthal's views on whether Federal Rules depositions may take place in Germany based on his experiences in another case.

Although in their opposition brief defendants did not take issue with the materials plaintiffs submitted from the U.S. Consulate General Frankfurt that detail the steps plaintiffs would have to follow to depose witnesses in Germany, at the hearing defendants maintained that the Court's June 20, 2001, Order allowing discovery to proceed under the Federal Rules rendered the German procedures inapplicable.

. . .

> I conclude that the requirements of German law respecting the taking of evidence by deposition in Germany of German nationals apply notwithstanding Judge Hogan's June 20, 2001, Order that merits discovery in this case proceed under the Federal Rules. I am not prepared to place significant reliance upon the conflicting declarations of various counsel and court reporters who have participated in depositions in other cases as to whether those depositions proceeded with or without impediments. Nor am I willing to rest upon the representations of defense counsel, which I accept as made in full good faith, that any depositions ordered to take place in Germany would proceed at counsel's office without limitation, particularly since those counsel did not speak on behalf of Germany itself or on behalf of all parties who may be represented at the depositions, including counsel who may be retained by the witnesses.

The same severe restrictions remain in place as shown from the Internet site of the Consulate General of the United States in Frankfurt, Germany. Exhibit A, Declaration of J. Scott Dickman, at Exhibit A-3. Clearly, forcing the noticed depositions to occur in Germany and Austria will substantially prejudice Plaintiffs, and divest this proceeding of its rightful character premised on the Federal Rules of Civil Procedure. *See also*, Statement of Facts, ¶¶ 9-10. This is a further sufficient reason to deny the Motion. *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 539 (MD 1996).

Of course, additional circumstances or factors noted in *Custom Form* and *Schindler*, and cases cited therein as quoted above, warrant the depositions in the United States as noticed. One such factor given consideration in the early cases was international comity. This is defined as the "spirit of cooperation in which a domestic tribunal decides cases touching on the interests of other sovereign states." *Id.*, at 537. This factor or consideration is not even raised by Defendants, and it has been determined that:

> . . . If a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated. *See In re: Anschuetz & Co.*, 754 F.2d 602, 608, n. 13 (5th Cir. 1985) . . .

-12-

*In re Honda American*, at 538.  The *In re Honda American* case essentially considered no other factors other than the prejudice of forcing depositions in Japan under its rules when "Honda Japan would have free reign to discover all relevant facts pursuant to the Federal Rules of Civil Procedure. *Id*., at 539.

In *Metcalf v. Bay Ferries Ltd.*, 2014 WL 3670786, *1 (D.Mass 2014), other determinative factors for setting the locus of foreign parties' depositions are set out:

> The factors bearing on what justice requires when the Rule 30(b)(6) deposition involves the deposition of a foreign corporation include, but are not limited to: the burden for counsel and witnesses of holding the depositions in the United States compared to abroad; the court's ability to supervise depositions in the contested location; whether depositions would be impeded by barriers in the other nation; and, any potential affront to sovereignty. *In re Vitamin Antitrust Litigation*, Misc. No. 99-197-TFH, 2001 WL 35814436, at *4 (D.D.C. Sept. 11, 2001). Notwithstanding these special considerations for foreign nationals, "[w]hen a corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made." *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D.Ind. 2000) and cases cited.

Addressing these factors in order, it is first clear that there is a lesser burden for counsel and witnesses to holding the depositions in the United States compared to Germany and Austria. Defendants' counsel is located in New York, New York.  Defendants' expenses to come to the United States are counterbalanced by the expenses of sending their New York and Oklahoma lawyers to Europe.[3]  There are considerable additional costs in effecting the depositions abroad.  Statement of Facts, ¶ 9.  Moreover, as noted, Unger travels frequently to the United States and presumably could serve as Constantia's 30(b)(6) witness, as he is most knowledgeable of the facts.  Declaration of J. Scott Dickman, ¶ 3.  If Constantia wishes to designate some other alternative 30(b)(6) designee

---

[3] Defendants have always involved three lawyers in Rule 37 conferences.  It is reasonable to presume that at least two New York lawyers will travel to depositions in Germany and Austria. Depositions in Europe will be more costly.  Statement of Facts, ¶ 15.

-13-

to protect Unger, that is an additional burden of its undertaking. As to One Equity Partners (Europe), it is part of a multi-national organization, and its partners are perceived as traveling frequently around the world. Exhibit A, Declaration of J. Scott Dickman, ¶ 5.

A key factor emphasized not only in *Metcalf*, but also in virtually all the other cases, is the court's ability to supervise depositions in the contested location, and whether the depositions would be impeded by Defendants' and other nations' laws. Here, there are significant barriers from foreign law, and the likelihood of disputes requiring intervention is high. Statement of Facts, ¶¶ 9-10 and 14; and pp. 10-11, *supra*. If the depositions are held in Europe, there will be virtually no ability for this Court to intervene. Exhibit B, Declaration of Laurence L. Pinkerton, ¶ 12. In *Custom Form*, it was noted that,

> The court's authority is compromised by distance. Without a federal judge or magistrate in Japan it would be difficult to resolve discovery disputes that might arise in this matter. Accordingly, the court must conclude that the best way to protect the discovery process in this case, and the best way to avoid sovereignty issues that might otherwise arise, is to compel that the Rule 30(b)(b) of defendants' employees take place in the United States.

*Custom Form, id.*, at 337. *See also*, *Afram Export Corp. v. Metallurgiki Halyps S.A.*, 772 F.2d 1358, 1355 (7th Cir. 1985). This factor undisputedly requires the depositions in the United States.

In the Defendants' case of *Outsidewall*, various factors for determining the depositions' location are also mentioned. These include whether the deponent frequently travels to the proposed deposition sites. *Outsidewall*, at 474. It seems apparent that Constantia regularly oversees the business of its five subsidiaries in the United States and uses New York as its gateway city. Unger is CFO of a corporation in Miami, Florida, and must travel there. Their lawyers are in New York City. Either New York or Miami can serve as the locus of the deposition. Likewise, One Equity

-14-

Partners (Europe) can be easily deposed in New York, and its directors are perceived to travel there frequently.  Statement of Facts, ¶ 13.

Having cited *Outsidewall*, Defendants could not have escaped the importance of the travel issue, yet, significantly, they carefully avoid raising any factors in that regard in their opening papers. This absence is circumstantial evidence of there being substantial travel to the United States by Unger and Defendants.  Any effort of the Defendants to posit facts to the contrary in reply should be disregarded by the Court.  Also noted in *Outsidewall*, are the factors of:

> (i) Whether some facet of Dubai law might operate to hinder or obstruct plaintiffs in taking the depositions in Dubai, and perhaps relatedly, (ii) whether defendants' discovery conduct suggest that they or the deponents will be uncooperative or obstructionist if they depositions occur in Dubai.

*Outsidewall*, *supra*, at 473. Both of these factors speak in favor of the noticed depositions being upheld.  Obviously, the potential for the necessity of judicial intervention weighs heavily in favor of the depositions being conducted in the United States as previously argued.

For all the above reasons, the 30(b)(6) depositions of each of the Defendants and of Unger should be held where noticed, or at the alternate site of Miami, FL as noted above.

 s/ Laurence L. Pinkerton
Laurence L. Pinkerton, Esq. (OBA #7168)
PINKERTON & FINN, P.C.
Penthouse Suite
15 E. 5th Street
Tulsa, Oklahoma 74103-4303
(918) 587-1800
(918) 582-2900 fax
pf@att.net
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on July 7th, 2015, I electronically transmitted the foregoing pleading, to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

> John D. Russell, Esq.
> GABLEGOTWALS
> 1100 ONEOK Plaza
> 100 West Fifth Street
> Tulsa, Oklahoma 74103-4217
>
> Cheryl Howard, Esq.
> Aaron Lang, Esq.
> Marshall Fishman, Esq.
> FRESHFIELDS BRUCKHAUS DERINGER US LLP
> 601 Lexington Ave., 31st Floor
> New York, NY 10022

                                      s/ Laurence L. Pinkerton