IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PINNACLE PACKAGING COMPANY, INC.**, an Oklahoma corporation, **POLO ROAD LEASING, LLC**, an Oklahoma limited liability company, and **J. SCOTT DICKMAN**, <br><br>  Plaintiffs, <br> v. <br><br> **CONSTANTIA FLEXIBLES GmbH**, an Austrian corporation, and **ONE EQUITY PARTNERS (EUROPE) GmbH**, <br><br>  Defendants. | Case No. 12-CV-537-JED-TLW |

**DEFENDANT CONSTANTIA FLEXIBLES GmbH'S
AND ONE EQUITY PARTNERS (EUROPE) GmbH'S
REPLY TO THEIR MOTION FOR A PROTECTIVE ORDER**

In Defendants' motion for a protective order (the "Motion"), Defendants demonstrated that there is no basis to require Defendants and Mr. Unger to travel to the U.S. for their depositions. In response, Plaintiffs rely on misstatements of law and fact, rank speculation, and inapposite cases to argue that the depositions should take place in the U.S., notwithstanding that Plaintiffs previously advised of their willingness and ability to take the depositions in Europe. Plaintiffs' speculation and misstatements, however, fail to demonstrate any exceptional or unusual circumstances to justify deviating from the general rule that depositions of corporations are to be held at the company's principal place of business or where the individual deponent lives or works. Moreover, any delay necessitated by foreign procedures is due to Plaintiffs' own delay in taking the steps necessary to obtain required approvals, approvals of which they knew or should have known of for more than six months. Defendants should not be penalized for Plaintiffs' own failures, and Defendants request that the Court grant their Motion.

# ARGUMENT

### A. It is Plaintiffs' Burden to Justify Departure from the "Normal Procedure"

In the Tenth Circuit, "when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party," *Metrex Res. Corp. v .U.S.*, 151 F.R.D. 122, 125 (D. Colo. 1993), and the "normal procedure" is that the "deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995) (affirming protective order) (quoting 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil § 2112 at 81 (1994)); *see also Wyatt v. ADT Sec. Servs.*, No. 10-CV-383-GKF-FHM, 2011 WL 1990473, at *1 (N.D. Okla. May 23, 2011) (same). Plaintiffs half-heartedly dismiss this standard as a "legal presumption," and argue that Defendants have not met their burden to show good cause for a protective order. But Plaintiffs' departure from the normal procedure, without any justification for such departure, is a sufficient basis for this Court to grant the protective order. *See Wyatt,* 2011 WL 1990473, at *1 (granting motion for protective order where "Plaintiff has not forwarded any reason why [the normal] procedure should be altered").

### B. Plaintiffs Have Not Met Their Burden to Justify Departure from the Normal Procedure

As stated in the Motion, Plaintiffs must demonstrate "peculiar circumstances" that warrant departure from the general rule that Defendants are to be deposed at their principal place of business. Mot. at 4-5 (citing *In re Joseph Walker & Co.*, 472 B.R. 696, 700 (Bankr. D.S.C. 2012)). In a stunning display of hypocrisy, Plaintiffs – *who do not cite a single case from any court in the Tenth Circuit* to support their argument that Defendants' depositions should proceed in New York – argue that the standard set forth in *In re Joseph Walker* is inapplicable because it is not Tenth Circuit precedent. Opp'n at 8. This Court routinely relies on federal jurisprudence

outside of the Circuit in resolving discovery disputes,[1] and the rule noted by the bankruptcy court has been recognized by numerous other federal courts.[2]  Moreover, ***courts in this Circuit*** have adopted an analogous standard, requiring a showing of "exceptional" or "unusual" circumstances to warrant departure from the general rule that depositions should occur where the deponent resides or where the corporation's principal place of business is located.  *See Delorey v. P&B Transp. Inc.*, Civ. A. No. 07-cv-01916-WYD-KMT, 2008 U.S. Dist. LEXIS 58386, at *3 (D. Colo. July 11, 2008) ("[I]n the absence of exceptional or unusual circumstances, when a deponent resides at a substantial distance from the deposing party's residence, the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even if the deponent is a party."); *Valencia v. Colo. Cas. Ins. Co.*, Case. No. 06-1259 JB/RHS, 2007 U.S. Dist. LEXIS 97723, at *14-16 (D.N.M. Dec. 8, 2007) (same); *Zhou v. Pittsburg State Univ.*, 252 F. Supp. 2d 1194, 1202 (D. Kan. 2003) (same).  The cases Plaintiffs cite in support of their argument – all from other jurisdictions – support Defendants' argument that the depositions should take place in Europe,[3] are mischaracterized by Plaintiffs,[4] or are

---

[1] *See, e.g.*, Second Russell Decl. Ex. 3 (attaching *Farley v. Ross*, No. 14-cv-007-TCK-TLW (N.D. Okla. Mar. 5, 2015) (T. Lane Wilson, M.J.) (citing precedent from 4th Cir. and M.D.N.C.); *Wells Fargo Bank, N.A. v. Lincoln Nat'l Life Ins. Co.*, No. 10-cv-703-TCK-TLW (N.D. Okla. Aug. 4, 2011) (T. Lane Wilson, M.J.) (citing precedent from the N.D.N.Y.); *Harwood v. Ferguson Advantage Imports Isuzu-Subaru-Kia-Suzuki, LLC*, No. 09-cv-747-JHP-TLW (N.D. Okla. Aug. 16, 2010) (T. Lane Wilson, M.J.) (citing precedent from 5th Circuit and M.D.N.C.)).

[2] *See, e.g.*, *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) ("[T]he plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the court to order the depositions to be held in an alternate location."); *see also Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087(JFK), 2012 WL 1589597, at *6 (S.D.N.Y. May 7, 2012) (same); *Fed. Deposit Ins. Co. v. La Antillana, S.A.*, No. 88 Civ. 2670 (JFK), 1990 WL 155727, at *1 (S.D.N.Y. Oct. 5, 1990) (same) (citing *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)).

[3] In *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2008 WL 4487679, at *3 (S.D.Fla. Sept. 29, 2008) (cited in Opp'n at 9), where Swiss law arguably prohibited a deposition, the Court ordered the deposition to occur in London or "a location otherwise convenient" for the witness.  In *Triple Crown America, Inc. v. Biosynth AG*, No. CIV.A. 96-7476, 1998 WL 227886 (E.D. Pa. Apr. 30, 1998) (cited in Opp'n at 10), the court ordered the deposition of one defendant to take place at defendant's headquarters because "Plaintiff has presented no persuasive reason to deviate from the general rule with respect to the depositions of defendant."  *Id*. at *3.  The Swiss defendant's deposition was to occur in the U.S. because "Swiss law places substantial

inapposite.[5]

As set forth below, Plaintiffs have not and cannot show any circumstances – whether "peculiar," "exceptional," or "unusual" – warranting departure from the general rule that a deposition is to occur where the witness resides or the corporation's principal place of business.

### C. Plaintiffs' Arguments for Requiring Depositions in the United States Fail

#### 1. The Witnesses Can Be Deposed in Austria and Germany, But Plaintiffs Have Made No Effort to Do So

There is no basis for Plaintiffs' argument that depositions should occur in the U.S. because taking depositions in Austria would be "virtually impossible" and "[t]his dismal outlook continues for Germany." Opp'n at 4, 5. To the contrary, there are procedures for taking such depositions abroad, but Plaintiffs have chosen not to avail themselves of such procedures.

Plaintiffs' claim that depositions in Austria "without agreement" are "virtually impossible"

---

restrictions on the conduct of discovery, including criminal sanctions against an attorney who attempts to take sworn discovery in that country for use in foreign litigation even from a consenting party." *Id*. The same is not true for depositions in Germany and Austria. *Infra* at 5-6.

[4] Plaintiffs cite *Intl. Ins. Co. v. Caha Nacional de Ahorro Y Seguro*, No. 00 C-6703, 2004 WL 555618 (N.D. Ill. Mar. 18, 2004) (Opp'n at 10) for the proposition, "deposition of representative of Argentine entity to occur in the United States." The court made no such holding; it found that, where the parties had agreed to an American-style deposition under the Federal Rules *in Buenos Aires, Argentina*, defendants could not then insist on an Argentine-style deposition. *Id*. at *3.

[5] *In re Honda American Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 539-42 (D. Md. 1996) is inapposite because the Court found that U.S. sovereignty concerns would be infringed if depositions were taken in Japan "under Japanese procedure." *Id*. Defendants are not arguing that Plaintiffs conduct the deposition under German or Austrian procedure. Plaintiffs' other cases are likewise inapposite. *See also Schindler Elevator Corp v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 527 (D.N.J. 2009) (deciding "whether a party seeking to take a deposition of a Swiss corporate defendant must comply with the Hague Convention or may it simply follow the [Federal Rules]"); *Ward-THG, Inc. v. Swiss Reins. Co.*, No. 96 Civ. 8100(MBM), 1997 WL 83294, at *1 (S.D.N.Y. Feb. 27, 1997) (ordering depositions in the U.S. where plaintiff volunteered "to pay the costs associated with travel and subsistence for the witnesses in question so they can come to this country, which in any event would be cheaper than having the lawyers travel to and sojourn in Switzerland"); *Custom Form Mfg. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000) (ordering deposition to occur in U.S. where defendants were Japanese corporations and U.S. subsidiary).

is based on a misplaced assumption. Had Plaintiffs asked, Constantia would have confirmed that it would agree to a deposition in Austria. Voluntary depositions are permissible in Austria, and the Austrian Minister of Justice ordinarily approves requests to have U.S. legal counsel conduct the depositions. *See* attached Declaration of Bertram Burtscher, ¶¶ 2-4; *see also* Mot. at 6 (citing *Baker Hughes Inc. v. Homa*, Civil No. H-11-3757, 2013 WL 684699, at *2 (S.D. Tex. Feb. 25, 2013) (holding that Austrian defendants must present their Austrian witnesses for deposition in Vienna to occur "pursuant to the Federal Rules of Civil Procedure")).

Plaintiffs' assertions about taking depositions in Germany are equally insufficient. U.S.-style depositions can and do occur in Germany. *See Tile Unlimited, Inc. v. Blanke Corp.*, No 10 C 8031, 2013 WL 2451143, at *1 (N.D. Ill. June 5, 2013); *see also* attached Declaration of Karin Geissl, ¶¶3-6 (depositions of German nationals may be conducted at the U.S. Consulate with prior approval of the German Ministry of Justice). Plaintiffs' citations are inapplicable.[6]

Despite knowing about the location of witnesses in Europe when they filed the case in 2012 and acknowledging three months ago that they "expect certain of [the depositions] will have to be in Europe,"[7] Plaintiffs have taken no steps to secure depositions in Europe. In addition, Plaintiffs' suggestion that Defendants have not been cooperative during discovery is unfounded. Plaintiffs' claim that Defendants never responded to Plaintiffs' e-mail dated April 2, 2015 raising the issue of depositions is false. *See* Opp'n at 2, 4.[8] As soon as the issue of depositions was

---

[6]  *In re Vitamin Antitrust Litigation*, No.Misc.No.99-197 TFH, MDL NO. 1285, 2001 WL 35814436, at *7 (D.D.C. Sept. 11, 2001), upon which Plaintiffs rely for the proposition that they cannot take depositions in Germany (Opp'n at 10-11), is inapposite. The defendants claimed that "depositions could take place in Germany pursuant to the Federal Rules, without the approval or intervention of the German government." *Id.* at *7 (D.D.C. Sept. 11, 2001). Defendants do not argue that the Court should order depositions in Germany without regard for local law. The ABA newsletter Plaintiffs cite notes limitations on depositions of *unwilling* witnesses (voluntary depositions may be taken at the U.S. Consulate). Opp'n at 5. Plaintiffs have not asked whether any witness would consent to a deposition.

[7]  *See* Ex. 1 to Declaration of John Russell dated June 22, 2015 ("Russell Decl.").

[8]  Plaintiffs' claim that Defendants did not respond to Plaintiffs' request for the addresses of witnesses identified in their Rule 26 disclosures (information Plaintiffs themselves did not

raised, Defendants undertook to ascertain the procedures for taking depositions in Austria and Germany. They advised Plaintiffs by e-mail on April 8, 2015 that they were not yet in a position to discuss depositions. *See* Exhibit 1 to the Second Declaration of John Russell ("Second Russell Decl."), attached hereto. During a call on April 21, Defendants explained their understanding that Plaintiffs would need to seek approvals from German and Austrian authorities in advance of taking depositions, and Defendants agreed to accept service of any deposition notices of Defendants, such that Plaintiffs need not resort to Hague or other foreign law procedures for service. Defendants confirmed their offer in an email to Plaintiffs on April 23. Second Russell Decl., Ex. 2. Plaintiffs chose not to take steps to secure necessary approvals, and during a conference call on May 7, 2015, Plaintiffs advised Defendants that Plaintiffs "may not even try" to take depositions of the witnesses who reside in Europe. Second Russell Decl., ¶ 4. Having made no attempt to secure depositions in Europe, Plaintiffs cannot now blame Defendants or claim that it would not have been possible to secure depositions.[9]

   2. **Plaintiffs Attempt to Place a Significant Burden on the Defendants Based on Wrong Information and Rank Speculation About Their U.S. Contacts**

Plaintiffs' assertions of Defendants' and witness contacts with the U.S. are based on misstatements of fact and rank speculation. For example, Thomas Unger does not "act[] directly as Chief Executive Officer for Global Packaging USA Corporation," Opp'n at 6, or any other U.S. company. *See* attached Declaration of Thomas Unger ("Unger Decl."), ¶ 3.

---

provide in their initial disclosures) is false. On April 23, Defendants provided Plaintiffs with business addresses and phone numbers for the witnesses. Ex. 2 to Second Russell Decl. Defendants were concerned about providing home addresses in light of Europe's strict data privacy regimes. *See, e.g.*, Burtscher Decl., ¶¶ 5-8. Defendants also provided dates of birth for the witnesses, based on their understanding that the information would facilitate the procurement of depositions in Europe and would not violate data privacy laws.

   [9]   For example, while Plaintiffs complain that "Rule 29 of the Federal Rules of Civil Procedure allows a stipulation on depositions, but Defendant [sic] have proposed nothing since Plaintiffs' initial inquiry on April 2, 2015," Opp'n at 3-4, Plaintiffs have only themselves to blame for not proposing a stipulation covering depositions (such as one that contemplates U.S.-style depositions in Europe), or taking any other actions to secure depositions abroad (such as inquiring into whether any witnesses located in Germany would consent to a deposition).

The Court should also reject Plaintiffs' argument that a deposition in the U.S. would not be burdensome for the European witnesses based on the following speculative assertions:

- Mr. Unger "*is believed* to travel frequently to the United States" (Opp'n at 6);
- OEP Europe's "members *are believed* to travel to New York" (*Id.*);
- Mr. Unger "*presumably*" could be Constantia's 30(b)(6) witness (*id.* at 13)[10];
- OEP Europe's "partners *are perceived* as traveling frequently around the world" (*id.* at 14; *see also id.* at 15);
- "*It seems apparent* that Constantia regularly oversees the business of its five subsidiaries in the United States and uses New York as its gateway city" (*id.* at 14) (Plaintiffs do not even attempt to cite anything for this bald assertion); and
- Mr. Unger "*must travel*" to Miami (*id.* at 14).

These speculative statements about Plaintiffs' "perceptions" and "beliefs" do not justify compelling the European Defendants to travel to the U.S. for depositions. Mr. Unger does not regularly travel to the U.S. and does not have any trips planned to the U.S. for the remainder of 2015. *See* Unger Decl., ¶¶ 4-5. Likewise, no OEP Europe employees are in the U.S.; one would need to travel here from Frankfurt. *See* attached Declaration of Dunja Mauser, ¶ 2. Mr. von Hugo – a former OEP Europe employee living in Frankfurt, and the only person affiliated with OEP Europe claimed to have had any involvement with the allegations in the Complaint – has not been to the U.S. this year and does not have any trips to the U.S. planned. *See* id. at ¶ 3; *see* attached Declaration of Christopher von Hugo, ¶¶ 2-4.

In a desperate maneuver, Plaintiffs ask this court to preemptively disregard any argument that Defendants do not engage in "substantial travel" to the U.S. Opp'n at 15. "Circumstantial evidence" and speculation are not sufficient to overcome facts set forth in sworn declarations.[11]

---

[10] While the parties agreed to defer discussion of the 30(b)(6) topics, it bears mention that the 30(b)(6) notices to Constantia and OEP Europe contained, respectively, 35 and 22 extremely broad topics, making it extremely difficult for one person to serve as a 30(b)(6) witness.

[11] Plaintiffs' assertions regarding Constantia's U.S. subsidiaries are irrelevant. Those entities are not defendants in this case and are not alleged to have had any involvement in the allegations.

### 3. Plaintiffs' Cost-Based Arguments Fail

Plaintiffs have never asserted that they cannot afford to travel to Europe for the depositions. Instead, they focus on tangential costs, and rely on unsupported assumptions to argue that it would be more costly to conduct the depositions in Europe than in the U.S.

Plaintiffs attempt to downplay the burden of forcing the witnesses to travel from Europe to the U.S. based on the theory that "Defendants' expenses to come to the United States are counterbalanced by the expenses of sending their New York and Oklahoma lawyers to Europe." Opp'n at 13. In that regard, Plaintiffs surmise, "It is *reasonable to deduce*…that Defendants will send no less than two attorneys to Europe for depositions" (*id*. at 7; *see also id*. at 13 n.3 (discussing what is supposedly "*reasonable to presume*")). This argument is not compelling. First, Defendants presently have no intention of sending more than one lawyer to Europe for any depositions. Second Russell Decl., ¶ 6. Therefore, the number of attorneys to travel to Europe is the same, if not less, than the number of witnesses Defendants would need to send to the U.S. Second, "the convenience of counsel is less compelling than any hardship to the witnesses." *Morin*, 229 F.R.D. at 363. Forcing executives of a business to travel internationally to be deposed is far more disruptive and burdensome than having counsel travel to perform their job.

The Court should also reject Plaintiffs' attempt to create cost-based arguments by threatening to generate more costs if they lose the motion. *See* Opp'n at 7 ("If the depositions are forced to Europe, then Plaintiffs would also seek two additional depositions beyond the three noticed. This further increases expenses in Europe for all parties.").

Moreover, Plaintiffs' preference to avoid certain expenses, such as spending $2,325 on "State Department facilitation" and costs for a translator and/or local counsel, Opp'n at 4, does not establish that conducting depositions in Europe are "virtually impossible." Opp'n at 4. *See Morin*, 229 F.R.D. at 363 (finding that "additional expense for the plaintiffs" is an "unremarkable" reason for forcing a witness to travel; "the plaintiff…is generally required to bear any reasonable burdens of inconvenience that the action represents") (citation and

quotation marks omitted); *see also Wagner v. Apisson*, No. 2:13 cv 937, 2014 WL 5439592, at *2 (D. Utah Oct. 24, 2014) (reminding plaintiff "that he initiated this case. In doing so, he must bear the consequences caused by litigation, which includes some burdens and inconveniences").

As stated in the Motion, Defendants will accept service of the deposition notices over Defendants and Mr. Unger. In addition, Defendants would agree to use a court reporter, videographer, and/or interpreter for U.S.-style depositions in Europe. Second Russell Decl. ¶ 5.

### 4. Plaintiffs' Remaining Arguments Are Unpersuasive

Plaintiffs' suggestion that allowing depositions to proceed in Austria or Germany may implicate international comity is unfounded. Opp'n at 12. "International comity," which Plaintiffs acknowledge was only a factor "in early cases," has no application here, where the procedures require approval and potential involvement of Austrian/German authorities.

In addition, Plaintiffs' speculation that court involvement *may* be needed during the deposition is insufficient to force Defendants to travel to the U.S. for the depositions. *See* Opp'n at 6 (speculating that "[t]here is good *reason to believe* that the Court's supervision will be required during the depositions wherever they are held") and ("Defendants, and perhaps even newly retained outside counsel for Unger, *may be anticipated* to interrupt with regard to issues of foreign law").[12] If that were a sufficient basis to require depositions to be held in the U.S., then no deposition would occur abroad.[13] The possibility of discovery disputes is insufficient to require Defendants to travel to the U.S. for their depositions:

"[T]hat discovery disputes may arise does not justify…requiring depositions to be taken in

---

[12] Plaintiffs' suggestion that Mr. Unger may have "newly-retained" counsel is without basis.

[13] Plaintiffs' reliance on "the inclination of the Defendants not to fully comply with discovery under the Federal Rules of Civil Procedure" (Opp'n at 6) is groundless. Plaintiffs' claim that "spurious objections were contained in their discovery responses along with incomplete answers" (Opp'n at 6) is belied by the Court's order on Plaintiffs' motion to compel, which held that certain objections were valid, and many of Defendants' responses "appear to answer the interrogatory." Doc. 114.

the forum; such a conclusion would collapse the presumption in favor of deposing corporate defendants in their place of business…." Th[e] Court is capable of handling discovery disputes—if they should arise at all—during or after the deposition, regardless of the deposition's location…. Accordingly, "the Court will not anticipate disputes by requiring the parties to appear in the forum for [a] deposition."

*Gulfstream*, 304 F.R.D. at 15 (quoting *Snow Brecker Krauss P.C. v. Proyectos E Instalaciones De Desalacion, S.A.*, No. 92 CIV. 2644, 1992 WL 395598, at *3 (S.D.N.Y. Dec. 11, 1992)).  Here, too, the Court is capable of handling discovery disputes, should they arise, during or after the deposition—close judicial supervision is unnecessary.

## CONCLUSION

As set forth above and in the Motion, Defendants respectfully request that the Court grant Defendants' Motion for a Protective Order, and require that any deposition of the foreign Defendants occur at their principal place of business or residence.

DATED: 21 July 2015

Respectfully submitted,

s/ John D. Russell
John D. Russell, OBA No. 13343
GABLEGOTWALS
1100 ONEOK Plaza
100 W. Fifth Street
Tulsa, OK  74103
Telephone: (918) 595-4800
Facsimile: (918) 595-4990
*jrussell@gablelaw.com*

Marshall Fishman, *Pro Hac Vice*
Gabrielle Gould, *Pro Hac Vice*
Cheryl Howard, *Pro Hac Vice*
Aaron Lang, *Pro Hac Vice*
FRESHFIELDS BRUCKHAUS
   DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone (212) 277-4000
Facsimile (212) 277-4001
*marshall.fishman@freshfields.com*
*gabrielle.gould@freshfields.com*
*cheryl.howard@freshfields.com*
*aaron.lang@freshfields.com*

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that on 21 July 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Laurence L. Pinkerton
James D. Jorgenson
Charles R. Willing
Aaron Lang
Gabrielle L. Gould
Cheryl Howard

                                        s/ John D. Russell
                                        John D. Russell