IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

PINNACLE PACKAGING
COMPANY, INC.,
an Oklahoma corporation,
POLO ROAD LEASING, LLC,
an Oklahoma limited liability company,
and J. SCOTT DICKMAN,

      Plaintiffs,

v.

CONSTANTIA FLEXIBLES GmbH, an
Austrian corporation, and ONE EQUITY
PARTNERS (EUROPE) GmbH,

      Defendants.

Case No. 12-CV-537-JED-TLW

## RULE 26(f) STIPULATION AND PROPOSED
## ORDER REGARDING DISCOVERY PROTOCOLS

WHEREAS, the above action, brought by Pinnacle Packaging Co., Inc., Polo Road

Leasing, LLC, and J. Scott Dickman (together, "Plaintiffs") against Constantia Flexibles GmbH

("Constantia") and One Equity Partners (Europe) GmbH ("OEP Europe," and together with

Constantia, "Defendants")  is pending before this Court;

WHEREAS, the parties filed a Joint Status Report on January 15, 2015, in which they

anticipated a supplemental submission to the Court to address issues relating to electronically

stored information ("ESI");

WHEREAS, the parties recognize that certain documents and ESI are relevant to the

parties' claims and defenses in this action and the parties have engaged in discussions

regarding the identification and production of such documents and ESI; and

WHEREAS, the parties have also engaged in discussions regarding the scope of

1

discovery and the subjects on which discovery may be needed in this matter;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE

PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

## I.  DISCOVERY PLAN

    A.  Plaintiffs intend to seek discovery directed to, among other things:

        1.  The negotiations, contacts, and communications that Plaintiffs claim were undertaken between and among the directors, officers, managers, employees and agents of the Defendants, One Equity Partners LLC, and the Plaintiffs, that commenced in or about May 21, 2012, and that continued through August 15, 2012.  This information would include communications with Centre Lane, Blaige & Company, Freshfields, and Wells Fargo Bank, N.A.  Plaintiffs also intend to seek third-party discovery related to the aforementioned subject matter.

    B.  Defendants intend to seek discovery directed to, among other things:

        1.  Plaintiffs' alleged communications with Defendants that form the basis of Plaintiffs' claims; Plaintiffs' marketing of Oracle to Centre Lane and other potential purchasers; Plaintiffs' sale of Oracle to Centre Lane and communications leading up to the sale; Oracle's debt owed to Wells Fargo; the value of Plaintiffs and Oracle, including their equipment and other assets.  Defendants also intend to seek third-party discovery related to the aforementioned subject matter.

## II.  PRESERVATION

    A.  Each party represents that, to the best of its knowledge, it has not taken intentional steps because of threatened or actual litigation relating to this case to make its ESI inaccessible or burdensome to acquire.

    B.  Each party will take reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting deletion, shredding, incineration, or theft of any document or data the party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P 26(b)(i).  This includes all relevant documents and data in the party's possession, custody or control.

III.   **PRODUCTION FORMAT OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

A.   <u>Electronically Stored Information</u>.  The parties will produce ESI according to the following protocol:

1.  Except as provided in Section III.C herein, all ESI shall be produced in TIFF format.  Each TIFF version of an electronic document will be created directly from the corresponding native file.  All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 81/2 X 11 inch page size, except for documents requiring different resolution or page size.

2.  A unitization file, in standard format (*e.g.*, Concordance, Concordance Image, Summation DII, or the like) showing the Bates number of each page, the appropriate unitization of the documents and the entire family range, will accompany each TIFF document.

3.  The parties and their respective vendors shall coordinate regarding the specifics of the load file formatting.

4.  Each document that is searchable in its native state (*e.g.*, .msg, .xls, .doc files) shall be produced with the extracted text from the body of the document as an accompanying text file.  Each document that is not searchable in its native state (*e.g.*, non-searchable .pdf, .jpg, .tiff images) shall be produced with an accompanying optical character recognition ("OCR") text file, to the extent that OCR text can be generated for the document.  Redacted documents shall be produced with an accompanying OCR text file that does not contain the redacted text.

5.  Each party shall bear the costs associated with generating OCR text files for documents in its production.

6.  The following metadata and production fields associated with each electronic document shall be provided:

   1)   FIRSTBATES
   2)   LASTBATES
   3)   BEGATTACH
   4)   ENDATTACH
   5)   PARENT_ID
   6)   ATTACHMENT_ID
   7)   ATTACHMENT_COUNT
   8)   FILE_NAME
   9)   FILE_EXTEN
   10)  ALL CUSTODIANS (*GENERATED BEFORE DEDUPLICATION PROCESS*)
   11)  PATH
   12)  AUTHOR
   13)  FROM

14)     TO
15)     CC
16)     BCC
17)     SUBJECT
18)     TITLE
19)     NATIVE_LINK (*LOCATION TO NATIVES TO THE EXTENT NATIVE FILES HAVE AGREED TO BE PRODUCED*)
20)     PARENT_DATE (*EMAILS AND ATTACHMENTS FOR CHRON SETTING*)
21)     DATE_CREATED (*NON-EMAILS*)
22)     TIME_CREATED (*NON-EMAILS*)
23)     DATE_MOD (*NON-EMAILS*)
24)     TIME_MOD (*NON-EMAILS*)
25)     DATE_SENT
26)     TIME_SENT
27)     DATE_RECEIVED
28)     TIME_RECEIVED
29)     DATE_PRINT (*NON-EMAILS*)
30)     TIME_PRINT (*NON-EMAILS*)
31)     PAGE_COUNT
32)     CONFIDENTIAL OR HIGHLY CONFIDENTIAL (*TO THE EXTENT DOCUMENTS HAVE BEEN DESIGNATED AS SUCH*)
33)     MD5HASH (*TO IDENTIFY ORIGINAL DOCUMENT*)
34)     TEXT (*LOCATION TO THE TEXT FILE*)
35)     CONVERSATION INDEX

B.     <u>Discovery Not Required</u>:  In the first instance, discovery shall not be required for the following categories of ESI but the parties each reserve their rights to request the categories below be searched, which request must be responded to within ten (10) calendar days:[1]

     1.   Data duplicated in any electronic backup system for the purpose of system or disaster recovery or information restoration that is not reasonably accessible because of undue burden or cost including, but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible;

     2.   Voicemail and text messages that are not reasonably accessible;

     3.   Instant messages that are not reasonably accessible;

---

[1]   For the avoidance of doubt, the voice recordings that Mr. Dickman allegedly made with his pen device are subject to discovery and are not considered to fall within any of these excluded categories.

4.  Electronic mail or other electronic data sent to or from a personal digital assistant (PDA) or smartphone (e.g., BlackBerry) only if the relevant data is synced to a network that will be collected in discovery;

5.  Deleted computer files, whether fragmented or whole;

6.  Data stored in random access memory (RAM), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

7.  Data stored on photocopiers, scanners, and fax machines;

8.  Server, system, or network logs; and

9.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

C.  Production of Native Files

1.  The parties agree that documents will be produced in the imaged format as set forth in Section III.A hereto and that no requesting party may request or seek to compel the production of ESI in native format on a wholesale basis, although specific documents within reason may be requested.

2.  Microsoft Excel files and other spreadsheets, audio, video, database type files, and other files that cannot reasonably be converted to TIFF image format, shall be produced in native file format in a separate folder on the production media, and the text load file shall contain a field that identifies the file path of the native file corresponding to each document. Any produced native files will be assigned a unique file name corresponding to the Bates number. For documents produced in native format, there will also be a placeholder TIFF image with the Bates number of the document produced in native format, stating "Document Produced in Native Format." The parties reserve their rights to request additional documents in native format if it is determined the document is not readable or usable in .tiff format.

D.  De-duplication

1.  The parties agree to utilize reasonable de-duplication procedures and that each party will disclose the methodology they used to de-duplicate (*e.g.*, MD5 Hashing, SHA-1).

2.  The parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of

the recipients (including "blind carbon copy" recipients) can be identified from documents or electronically stored information produced pursuant to the protocol set forth herein.  Where a subsequent electronic mail message contains all of the portions of an earlier message that was produced, it is not necessary for a producing party to produce the earlier message in addition to the subsequent inclusive message.  If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced pursuant to the protocol set forth herein, in addition to the subsequent inclusive message.

3. The parties agree that an email that includes content in the "bcc" or other blind copy field shall be produced.

E. Production Media

1. The parties shall produce ESI documents in an electronic form on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media (the "Production Media"). Information that shall be identified on the physical Production Media shall include:  (1) a reference to the above-captioned litigation, (2) the producing party's name, and (3) the production date.  The Bates number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.  If the producing party encrypts or "locks" the production, the producing party shall include with the production an explanation of how to decrypt the files.

2. Plaintiffs shall make available for inspection by Defendants and any of their employees, agents, consultants, or experts: (i) the original records of all conversations concerning the allegations in the Second Amended Complaint filed by Plaintiffs on January 6, 2015; and (ii) any devices Plaintiffs used to make such recordings.

3. ESI documents produced in accordance with this Stipulation will satisfy Federal Rule of Civil Procedure 34(b)(2)(E)(i).

## IV. IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI

A. Custodians:

1. Set forth in Exhibit A is a list of Defendants' custodians whose hard copy documents and ESI the parties have agreed will be searched for responsiveness to Plaintiffs' document requests, subject to Defendants' objections to the document requests.

(1) Also set forth in Exhibit A is a list of those search terms

that, subject to Part IV.B, below, should be run on Defendants' custodians' electronic data.

2. Set forth in Exhibit B is the list of Plaintiffs' custodians whose hard copy documents and ESI the parties have agreed will be searched for responsiveness to Defendants' document requests, subject to Plaintiffs' objections to the document requests.[2]

   (1) Also set forth in Exhibit B is a list of those search terms that, subject to Part IV.B, below, should be run on Plaintiffs' custodians' electronic data.

3. Notwithstanding the above, the parties understand and agree that they will only search for documents within their possession, custody or control with respect to the custodians identified in Exhibits A and B. The relevant time frame to be searched for each custodian is also set forth in Exhibits A and B.

B.    Search Terms:

1. The parties have met and conferred on search terms to be used to identify electronic documents that will be reviewed for possible production. Those agreed-upon search terms are set out in Exhibits A and B attached hereto.

2. Search terms will be run against all ESI collected from agreed-upon custodians, including emails and their attachments. If a search term returns an email or an attachment to an email, both the email and any attachment(s) will be reviewed and produced, if responsive and non-privileged, and subject to the parties' objections to discovery requests and any agreements reached in the parties' meet-and-confer process.

---

[2]   Defendants requested that Plaintiffs collect and produce ESI for the following eight additional custodians who are not included in Appendix B: Jerry Dickman, David Lawson, Chris Payne, Paula DuRant, Ernest Holley, Frank W. Murphy, Lynnwood Moore, and J. Ryan Sacra. Plaintiffs have not agreed to add those eight individuals as custodians. Notwithstanding that those individuals are not listed on Appendix B, Defendants believe that those custodians' documents were, at the time litigation was reasonably contemplated, within Plaintiffs' possession, custody, or control, and Defendants explicitly reserve all of their rights with respect to those custodians, including by taking any actions Defendants believe appropriate with respect to those custodians.

Plaintiffs object to this characterization of the individuals mentioned above as "custodians." Plaintiffs have agreed to search for documents of these individuals within Plaintiffs' electronic systems, and for hard copy documents, and Plaintiffs will request relevant ESI and hard copy documents from the eight individuals. In addition, Plaintiffs have arranged for Conner & Winters, which employs Lynnwood Moore, and Ryan Sacra, to run the search terms in Exhibit B, and after review by Plaintiffs, production of appropriate ESI and hard copy documents will be made. Plaintiffs will not search Hank Bird's personal computer, which backed up to the Pinnacle server every night, but its hard drive crashed in 2014, and has now been repopulated off the Pinnacle server.

3.  Subject to the parties' agreement, or Court Order, regarding the scope of Plaintiffs' or Defendants' document requests, the agreed-upon search terms shall be used to identify ESI that will be reviewed for responsiveness to Plaintiffs' or Defendants' discovery requests, and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing parties' discovery requests and to any agreements reached in the parties' meet-and-confer process.

4.  A party's obligation to conduct a reasonable search for paper documents in response to propounded discovery requests shall be deemed satisfied by: (i) collecting and producing responsive, non-privileged documents that are under the possession, custody or control of the party and, (ii) for individual custodians, asking the agreed-upon custodians whether they have any responsive and non-privileged hard copy documents, and if so, producing such hard copy documents.

5.  A party's obligation to conduct a reasonable search for electronic documents in response to propounded discovery requests shall be deemed to be satisfied by reviewing documents that are captured by utilizing the agreed-upon search terms to be applied to ESI from agreed-upon custodians during the agreed-upon time frame. Furthermore, and subject to a motion and court order, a party shall have no obligation to produce any documents, except as otherwise agreed to in writing by the parties, that are neither (a) captured by one or more of the agreed-upon search terms to be applied to ESI of agreed-upon custodians and identified as non-privileged and responsive to a specific propounded discovery request nor (b) otherwise identified by the party as non-privileged and responsive to a specific propounded discovery request.

6.  The fact that a document is captured by application of agreed-upon search terms from agreed-upon custodians does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. Propounded discovery requests shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process.

7.  If any party seeks to limit or modify any agreed-upon search terms based on that party's review of a hit report, which reflects the volume of documents responsive to specific search terms, that party will notify the opposing parties prior to any modification. Within 7 business days of being notified of any proposed modified search terms, an opposing party shall have the right to object to the modification of such search terms, and/or suggest alternative

terms.  The parties will then meet and confer regarding the proposed modified search terms, and if the parties are unable to agree about the use of the search terms within 7 business days of submission of the opposing party's objection(s), the parties will submit the matter to the Court.

8.   The parties will make reasonable efforts to identify any potentially relevant ESI that is password protected or encrypted and undertake to remove those passwords in order that the search terms can be run against that ESI and it can be reviewed.  If a party's efforts are unsuccessful, that party shall identify the file(s) at issue to the receiving party and, at the receiving party's request, discuss whether there is a reasonably available solution.  The parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible.

C.   Sources of data

1.   The parties have made reasonable efforts to identify, and will make reasonable efforts to collect, ESI from all reasonably accessible sources, subject to Part III.B, above.  This includes, without limitation, ESI located on:

(1)   custodians' personal computers and email accounts;

(2)   all servers in which the agreed-upon custodians' ESI resides;

(3)   portable media (such as USB flash drives, external hard drives, and the like);

(4)   company databases; and

(5)   personal digital assistants, to the extent the data residing thereon is not synched to a network that will be collected in discovery.

## V.   PROTECTIVE ORDER

A.   The parties have agreed that a protective order should be entered in this case to protect the confidential information of both parties, as well as to comply with federal, state or foreign data protection laws.  The specific terms of such an agreement has been reached and ordered by the Court and will govern the exchange of information throughout discovery.

## VI.   PROTECTION OF PRIVILEGES AND WORK PRODUCT IMMUNITY

   A.   Privilege Logs:

   1.   The prosecution and defense of this action will require each party to review and to disclose, through the discovery process, potentially large quantities of information and documents, including ESI.  As a result, the parties agree that record-by-record pre-production privilege review, and logging of privileged documents, would likely impose an undue burden on the parties' resources and is not required.

   2.   The parties agree that it is proper to provide the information required by Northern District of Oklahoma Local Rule 26.4 by groups or categories of documents when asserting privilege on the same basis with respect to multiple documents.  The parties also agree that they are not required to include on their privilege logs any protected documents that came into existence on or after the date of the filing of the Complaint in this action.

   3.   The parties agree that Plaintiffs will produce to Defendants their privilege log(s) by August 7, 2015, and Defendants will produce to Plaintiffs their privilege log(s) by August 12, 2015.

   4.   The parties have agreed without waiver of any rights that they will accept for the present a privilege log for documents withheld from the production of the parties' external counsel during the period of July 23, 2012 through August 2, 2012.  The log pursuant to this provision has been produced to Plaintiffs by Defendants on May 31, 2015, and was produced by Plaintiffs to Defendants on June 25, 2015.  The content for these privilege logs is defined in the email correspondence from Defendants' counsel dated May 18, 2015.

   B.   Each party shall examine the files containing documents to be produced and shall screen documents for privilege.  Such examination shall be performed with due regard for the likelihood that the files contain privileged documents.

   C.   Each party agrees that when the inadvertent or mistaken disclosure of any information, document or thing protected by any applicable privilege or work-product immunity is discovered by the producing party and brought to the attention of the receiving party, each person in possession of copies of the inadvertently-produced privileged materials shall promptly (but in no event later than three days after receiving notice from the party requesting return) return the inadvertently-produced privileged materials and all copies thereof and shall expunge from any other document or material in its possession any information derived from the inadvertently-produced privileged materials.  The receiving party shall provide written certification of compliance with this directive within 3 days of discovery or notice of such inadvertent production.  Such inadvertent or mistaken disclosure of such information, document or thing shall not by itself

constitute a waiver by the producing party of any claims of privilege or work-product immunity.

D.      If the producing party claims that only a portion of the document is privileged, the producing party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted.

E.      Nothing herein restricts the right of the receiving party to challenge the producing party's claim of privilege if appropriate and within a reasonable time after receiving notice of the inadvertent or mistaken disclosure.

F.      The parties' stipulations and this Order invoke the protections afforded by Fed. R. Evid. 502(d).  As used in this Order, "privilege" means both the attorney-client privilege and the work-product immunity doctrine.  Pursuant to Fed. R. Evid. 502(d), the disclosure of privileged information or documents in discovery — consistent with the terms of the parties' stipulation and this Order — shall not waive the claim of privilege or protection this proceeding or in any other federal or state proceeding.

Dated:  New York, New York          By:  _Laurence L. Pinkerton_
        July 29, 2015

                                    Laurence L. Pinkerton, OBA #7168
                                    PINKERTON LAW, P.C.
                                    Penthouse Suite
                                    15 East 5th Street
                                    Tulsa, Oklahoma 74103-4303
                                    Tele:  (918) 587-1800
                                    Fax: (918) 582-2900
                                    **pf@att.net**

                                    *Counsel for Plaintiffs*


                                    By:  /s/ John D. Russell

                                    John D. Russell (OBA# 13343)
                                    GABLEGOTWALS
                                    1100 ONEOK Plaza
                                    100 W. Fifth Street
                                    Tulsa, OK  74103
                                    Telephone: (918) 595-4800
                                    Facsimile: (918) 595-4990

                                    Gabrielle Gould, *Pro Hac Vice*
                                    Cheryl Howard, *Pro Hac Vice*
                                    Aaron Lang, *Pro Hac Vice*
                                    Freshfields Bruckhaus Deringer US LLP
                                    601 Lexington Avenue, 31st Floor
                                    New York, NY 10022
                                    Telephone (212) 277-4000; Facsimile (212) 277-4001
                                    gabrielle.gould@freshfields.com
                                    cheryl.howard@freshfields.com
                                    aaron.lang@freshfields.com

                                    *Counsel for Defendants*

## ORDER

GOOD CAUSE APPEARING THEREFORE, IT IS SO ORDERED:

Dated: _____            _____
                                             Hon. John E. Dowdell

<u>Exhibit A</u>
Defendants' Custodians and Search Terms to be Run on Them

**<u>Date Range</u>**
April 20, 2012 through September 21, 2012

**<u>Custodians</u>**
Clemens Burstmayr
Steve Godwin
Jan Homan
Richard Kelsey
Florian Koller
George Thibeault
Thomas Unger
Christopher von Hugo
Christian Zeller
Timothy Wilkins
Saswat Bohidar
Arend von Riegen

**<u>Search Terms</u>**

*Set A: Names*
*A.1 – terms to be run on all custodians (full name, and separately, last name)*
- Hank Bird
- Tom Blaige
- Thomas Blaige
- Joe Curdy
- J. Jerry Dickman
- J. Scott Dickman
- Ernest S. Holley
- David R. Lawson
- Lynwood R. Moore[3]
- Frank W. Murphy, III
- Frank w/2 Murphy
- Paula Noel
- Chris Payne
- Nathan Richey
- J. Ryan Sacra
- Scott O. Schryver
- Dan Scouler
- David Weitman
- Ron M. Zieber

---

[3] Indicates that the terms "Moore" and "Murphy" will not be run as search terms for Freshfields custodians.

*A.2 – terms to be run only on Constantia and OEP Europe custodians (full name, and separately, last name)*
- Kate Drummond
- Elizabeth Hundt Russell
- Lisa Obrien

*A.3 – terms to be run only on Freshfields custodians (full name, and separately, last name)*
- Clemens Burstmayr
- Steve Godwin
- Jan Homan
- Richard Kelsey
- Florian Koller
- George Thibeault
- Thomas Unger
- Christopher von Hugo
- Christian Zeller

*Set B: Additional Terms*
*B.1 – terms to be run on all custodians, unless otherwise noted*

| ENGLISH | GERMAN |
|---|---|
| $3 million | $3 Millionen, 3 Millionen USD |
| Akerman and Senterfitt | Akerman und Senterfitt |
| Amendment w/10 intent | Änderung, Zusatz w/10 absicht |
| Andrew w/2 Gold | Andrew w/2 Gold |
| Cease and desist | Unterlassungsaufforderung |
| Centre and Lane | Centre und Lane |
| Chobani | Chobani |
| Constantia or Cflex (these terms not to be searched for Constantia or OEP Europe custodians) | Constantia oder Cflex (these terms not to be searched for Constantia or OEP Europe custodians) |
| Daily w/2 collateral | Täglich w/2 Sicherheiten |
| Delphi | Delphi |
| Extend w/3 maturity | Fälligkeit w/3 verlängern |
| Fred w/3 Daniel | Fred /3 Daniel |
| Golder | Golder |

| | |
|---|---|
| Infusion w/3 cash | Geldspritze |
| LOI | Absichtserklärung, Patronatserklärung |
| Mauro & Souza | Mauro & Souza |
| Oak | Oak, Eiche |
| One and Equity and Partners and Europe (these terms not to be searched in OEP Europe custodian mailboxes) | One und Equity und Partners und Europa (these terms not to be searched in OEP Europe custodian mailboxes) |
| Oracle | Oracle |
| Payoff w/3 letter | Amortisation w/3 Schreiben |
| Penny and Plate | Penny and Plate |
| Phoenix w/3 aluminum | Phoenix w/3 Aluminium |
| Pinnacle | Pinnacle |
| Polo Road | Polo Road |
| Pro forma w/3 income and statement | Proforma w/3 Einkommen und Erklärung, Planjahresabschluss |
| Project w/3 Delphi | Projekt w/3 Delphi |
| Purchase w/3 loan | Kauf w/3 Darlehen |
| mill | Walzwerk |
| Schryver | Schryver |
| Scouler | Scouler |
| Sixth Amendment | Sixth Amendment, sechster Verfassungszusatz |
| Stephens | Stephens |
| St. Regis | St. Regis |
| Stephens and Centre | Stephens und Centre |
| Tulsa | Tulsa |
| "Von Hugo" or "CvH" or "VanHugo" or "Van Hugo" (these terms not to be searched in OEP Europe custodian mailboxes) | "Von Hugo" oder "CvH" oder "VanHugo" oder "Van Hugo" (these terms not to be searched in OEP Europe custodian mailboxes) |
| Wells w/15 loan | Wells w/15 Darlehen |

| | |
|---|---|
| Wells w/2 Fargo | Wells w/2 Fargo |
| Wells w/15 debt | Wells w/15 Schuld* |
| Zeiber | Zeiber |

*B.2 – terms to be run on Constantia and OEP Europe custodians*

| ENGLISH | GERMAN |
|---|---|
| Agree* and (oral or verbal)[4] | (Absprache oder mündliches) Einverständnis |
| Bank w/3 loan | Bank w/3 Darlehen |
| Bankruptcy | |
| Centre | Centre |
| "Conner & Winters" or "C&W" | "Conner & Winters" oder "Conner & Winters" oder "C&W" |
| Consult* and (Scott or Dickman) | Berat* und (Scott oder Dickman) |
| Credit and Security and Agreement and Revolving | Kredit und Sicherheit und Vereinbarung und revolvierend |
| Disclosure w/3 agreement | Offenlegung w/3 Vereinbarung |
| | Prospektprüfung, Informationsoffenlegung |
| | Umgebung*, Umwelt* |
| Financing w/10 options | Finanzierung w/1 0 Optionen |
| Fire w/4 (sell or sale) | Brand /4 (verkauf*) |
| jpmorgan (in address line only) | |
| Letter and intent | Absicht und Erklärung |
| Loan w/3 cap | Anleihe mit Höchstzinssatz |
| | GHV oder vertraulichkeits* /3 vereinbarung |
| OEP or One Equity or oneequity (these terms not to be searched in OEP Europe custodian mailboxes) | "OEP" oder "One Equity" oder oneequity (these terms not to be searched in OEP Europe custodian mailboxes) |
| Oklahoma | Oklahoma |
| Promissory w/3 note | Schuldbrief, Schuldschein |

[4] * acts as a root expander in this Exhibit A and in Exhibit B.

| | |
|---|---|
| | (kauf* oder akquis*) und (darlehen oder schulden oder schein oder kredit) |
| | Umstrukturierung |
| | Frist w/3 Blatt |
| | Kapital w/2 anlegen |

*The terms in B.2 shall also be run on Freshfields custodians, but will not be considered a "hit" or subject to review unless the document also contains at least one term from either A.1 or A.3, above.*

## Exclusions

The following modifications apply to the review of documents from Freshfields Bruckhaus Deringer LLP and Freshfields Bruckhaus Deringer US LLP and will be excluded from the review and production:

- Emails sent to or from internal automated distribution lists (such as All New York Attorneys or Worldwide Partners).  Emails sent to or from distribution groups related to the potential Oracle transaction, if any, will <u>not</u> be excluded from the review;
- Emails related to other deals which do not also contain at least one of the following terms: Oracle, Pinnacle, Dickman, Delphi, Polo Road, Centre Lane, Blaige, Oak;
- Emails that are reasonably identified as relating to firm business, pro bono projects, and community outreach (e.g., internal announcements);
- Commercial emails and newsletters (e.g., NY Times headlines, frequent flyer airline statements); and
- Personal emails routed from a personal email address that was not used for this matter.

<u>Exhibit B</u>
Plaintiffs' Custodians and Search Terms to be Run on Them

**<u>Date range</u>**
September 1, 2011 through September 26, 2012

**<u>Custodians</u>**
J. Scott Dickman
Hank Bird
Paula Noel

**<u>Search Terms</u>**

(action or litigation or complaint or lawsuit or suing or suit or sued or sue)
agree* and (oral or verbal)
Akerman or Senterfitt
"Bank of America"
bank and loan
bankrupt*
Blaige
Centre or "CL" or "CLP"
Chobani
"Conner & Winters" or "Conner and Winters" or "C&W"
consult* and (Scott or Dickman)
Constantia or Cflex
Curdy
daily w/2 collateral
Delphi
due diligence
DuRant
environment*
exclusiv*
financ* or refinanc*
fire w/4 (sell or sale)
Fred w/3 Daniel
Freshfields
Golder
Holley
income and statement
Jan or Homan
JP Morgan or JPM
Kelsey
liquidity

"LOI" or "Letter of Intent"
Mauro or Souza
Mill
Moore
Murphy
NDA or (*disclos* w/3 agree*)
Oak
"OEP" or "One Equity" or oneequity
Oracle
Payne
Penny and Plate
Phoenix and aluminum
"Polo Road"
promissory w/3 note
(purchas* or acqui*) and (loan or debt or note or credit)
restructur*
Richey
Sacra
Schryver
Scouler
Stephens
term w/3 sheet
Unger
"Von Hugo" or "CvH" or "VanHugo" or "Van Hugo"
Wells
Zeiber

**Exclusions**

The following modifications apply to the review of documents from Conner & Winters and will be excluded from the review and production:
- Emails sent to or from internal automated distribution lists (such as All New York Attorneys or Worldwide Partners).  Emails sent to or from distribution groups related to the potential Oracle transaction, if any, will not be excluded from the review;
- Emails related to other deals which do not also contain at least one of the following terms: Oracle, Pinnacle, Dickman, Delphi, Polo Road, Centre Lane, Blaige, Oak;
- Emails that are reasonably identified as relating to firm business, pro bono projects, and community outreach (e.g., internal announcements);
- Commercial emails and newsletters (e.g., NY Times headlines, frequent flyer airline statements); and
- Personal emails routed from a personal email address that was not used for this matter.