# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PINNACLE PACKAGING COMPANY, )
INC., an Oklahoma corporation, )
POLO ROAD LEASING, LLC, an Okla- )
homa limited liability company, and )
J. SCOTT DICKMAN, )
                                   )
         Plaintiffs,               )
                                   )
vs.                                )    Case No. 12-CV-537-JED-TLW
                                   )
CONSTANTIA FLEXIBLES GmbH, an      )
Austrian corporation, and          )
ONE EQUITY PARTNERS (EUROPE) GmbH, )
                                   )
         Defendants.               )

## DECLARATION OF J. SCOTT DICKMAN

J. Scott Dickman declares the following:

1. My name is J. Scott Dickman. I am over the age of twenty-one years, of sound mind, and fully competent to testify to the matters set forth herein. I have personal knowledge of the statements contained herein, and they are true and correct.

2. I formed Pinnacle Packaging Company, an Oklahoma corporation ("Pinnacle"), in 2001 and served as its President and CEO for more than 11 years. Pinnacle was the holding company of Oracle Packaging Company and Oracle Flexible Packaging, Inc. ("Oracle"). Over the years we were able to realize significant growth and at one time had more than $200 million in sales, 800 employees, and was ranked as the 27th largest flexible packaging company in the United States. From my capacities for Oracle, I am knowledgeable of its electronically-stored information and documents, and the actions of its officers and employees in connection with matters raised in the Second Amended Complaint in this lawsuit.

3. My perception of the remaining document requests of the Defendants is that they have been satisfied by the vast number of previous productions, or they now seek irrelevant documents. My comments on specific requests follow using the numbers from Defendants' original request:

2. <u>Communications with Centre Lane:</u>

All communications with Centre Lane that are either *to or from* Pinnacle personnel, officers and/or as well as any communications which a Pinnacle employee or officer were *copied* or *blind copied* have been produced under Plaintiffs' Production Response. If there are communications between Oracle and Centre Lane, the established practice was to copy either Scott Dickman, Hank Bird, Lynn Moore or all of the above. Therefore, the documents and information would have been housed on the server in Pinnacle's Tulsa office and as a result production of such document has been made. If there were communications directly between an employee of Oracle Flexible Packaging Company and Centre Lane and the established practice was not followed, it would be limited to communications to or from Chris Payne, Ernie Holley or Angela Meredith, and would have occurred after March 1, 2012 *(Exchange of updated information that resulted in the 2nd LOI with Centre Lane)* and August 11, 2012 *(Day after closing of the fire sale to Centre Lane)*. Any such communication would have been produced by Centre Lane. In any event, it would not lead to admissible evidence because it would not relate to the issues that remain as set forth in the *Response of Plaintiffs to Defendants Constantia Flexibles GmbH's and One Equity Partners (Europe) GmbH's Motion to Compel Production of Documents and Brief in Support*. These individuals would know nothing about the payoff of the Wells Debt, or whether there would be a closing with Centre Lane, as I was dealing directly with Nathan Richey, or on the valuation of Oracle. (This latter point is addressed in the Declaration of David Payne.)

3. <u>Documents concerning Dickman's, Pinnacle's, and Oracle's efforts to sell Oracle including a sale of Oracle's outstanding stock, to any person.</u>

Oracle did not undertake efforts to sell itself. All documents have been produced by Pinnacle in response to this request, including information in the electronic data room and all communications with Centre Lane or Defendants to or from Pinnacle or with Pinnacle officers, who were responsible for the sale.

All documents regarding, related to, provided with respect to the sale of Pinnacle stock or assets of Oracle flexible packaging or Polo Road Leasing, LLC. *(except for copies of documents previously produced)* would have been communicated directly thru Pinnacle or placed in the electronic data room. All information placed into the electronic data room was inserted by Hank Bird *via* his Pinnacle e-mail account and thru the Pinnacle server only. All information provided to a potential purchaser was provided in the data room unless a request was made for a specific piece of

information that would facilitate the creation of a specific model for a specific scenario that was being considered by the potential purchaser for a strategic purpose. In such case, it would be limited to communications *to or from* Chris Payne, Ernie Holley and Angela Meredith. Such a theoretical model has no relevance to a valuation of Oracle, or other issues in the case.

13. Documents concerning the purchase of Oracle by PR Oracle Equipment, LLC or Centre Lane:

All documents have been produced and would not be housed on the Oracle server. Such documents were placed in either the electronic data room or exchanged between Pinnacle officers or counsel and PR Oracle Equipment, LLC and/or Centre Lane or their counsel. There may be copies of some documents on the Oracle server but they would only be copies of documents previously produced by Pinnacle.

14. Communications with Blaige:

All such documents have been produced with the possible exception of communications between Thomas Blaige and specific officers of Oracle. These would be limited to Ernie Holley, Chris Payne and Angela Meredith and only from the time frame of July 4, 2012 and August 3, 2012 *(Three days after breach of the agreement to acquire or refinance the Wells debt and the date on which the Defendants terminated all due diligence and communications with Plaintiffs)*. I believe any such document would not be relevant or lead to admissible evidence on the issues in the case. These three individuals were not involved in the Wells Debt discussions, on whether there would be a closing with Centre Lane, or on valuation as discussed in the Declaration of David Payne.

15. Documents concerning the Wells Debt:

All of the Wells Fargo Loan Agreements with exhibits, pay-off letters, numerous daily collateral reports, summaries of all debt balances, financial statements, etc… have been produced to Defendants. The only relevant documents on the Wells Debt are the loan agreements, the payoff letters, and communications with Defendants on payoff and the Centre Lane Settlement and Release. These have all been produced.

Oracle had multiple communications on a number of levels every day in the normal course of business with Wells Fargo from the moment it executed the initial Loan Agreement in 2008. All such communications were in the ordinary course of business and included daily collateral reports indicating the normal evolution of inventory, accounts receivable, the total amount of checks issued that day and the amount available for the company to access under its revolving line of credit to finance normal working capital requirements. In addition, there would be the communication of production trends, sales reports, updates on various six-sigma

projects, cost reduction initiatives, personnel changes, opportunities being considered by management, financial statements, tax returns, property tax returns, insurance certificates, etc.... During the calendar year 2012, Oracle had more than 200 employees and annual revenues over $100 million. Constant communication with Wells Fargo was essential in our view and appreciated by the Wells management team. The request being made could encompass a minimum of 20,000 pages (many of which would be copies) but none of these documents are relevant, nor would they lead to admissible evidence.

17. <u>Documents Concerning Plaintiff's and Oracle's attempts to obtain financing for Pinnacle, Polo Road or Oracle from any person.</u>

All such documents and information has been produced. All attempts to obtain financing were handled directly by Pinnacle officers. Oracle management or employees would only have been involved to the extent they provided information and details to Pinnacle officers. All communications were directly handled by Pinnacle and such documents, communications and information has been produced by Pinnacle. No information (other than copies of information provided to Pinnacle) would be housed on the Oracle server.

18. <u>Documents concerning *any* debt owed by Pinnacle, Polo Road, or Oracle in calendar years 2011 and 2012.</u>

As reflected in the objections, this request is for irrelevant documents and is burdensome. This request could include accounts payable in the normal course of business operations. Oracle, had hundreds of vendors and suppliers and to the extent accounts payable in the normal course of business would be included in this request, it would be an overly burdensome request to produce all invoices, approvals, reconciliations, payment records, data entry records, etc... for each account payable during the two calendar years requested and would result in an extreme amount of time and resources to locate, copy and produce such records. In addition, all accounts payable are reflected in the financial statements of Pinnacle, Polo Road Leasing and Oracle Flexible Packaging that have been produced.

All documents concerning debt of Pinnacle and Polo Road *(with the possible exception of copies of the documents previously produced)* would not be housed or contained on the Oracle server and have already been produced. Further, the debt of Oracle *(including the Wells Fargo debt)* has been produced. The officers of Pinnacle were directly responsible for negotiating and securing the corporate debt of Pinnacle, Oracle and Polo Road and any such documents would be in the files and electronic data previously produced.

19. <u>Documents concerning any due diligence performed or conducted with respect to Pinnacle, Polo Road, or Oracle by any person. This request includes a request for</u>

-4-

documents provided to any person who was conducting due diligence on Pinnacle, Polo Road, or Oracle.

As stated in the objections, the request is extremely overbroad and seeks irrelevant information. It could include inquiries from vendors requesting a credit application for payment terms, customer requests for raw material inventory levels, customer or institutional audits to maintain certifications, and many other scenarios that occurred in the ordinary course of business on a routine basis.

The documents regarding due diligence or information by a potential purchaser or senior lender about Pinnacle, Oracle Flexible Packaging and Polo Road have been produced. Significant due diligence information was produced to financial institutions, Centre Lane and the Defendants, which received all of the same information *via* access to the electronic data room. Communications and transfer of of information to the data room was performed through the Pinnacle server and have been produced. To the extent there are direct communications from an officer of Oracle, it was the standard procedure to copy the officers of Pinnacle so those documents would have already been produced. If there are other spurius communications, they would be limited to those of Ernie Holley, Chris Payne and Angela Meredith, and would have occurred only between March 19, 2012 and August 3, 2012. These would not be relevant or lead to admissible evidence on the issues in the case as discussed above.

20. Documents and information placed in a "data room" or other wise made available to Defendants or any person for their due diligence review in connection with the proposed transaction alleged in complaint.

All documents and information placed in the electronic data room have been produced. All information deposited in the electronic data room was placed by Hank Bird via transfer by the internet and thru the Pinnacle server. Such documents have been produced.

21. Documents concerning financial valuations of Pinnacle, Polo Road and Oracle.

Documents concerning financial valuations, including appraisals, financial statements, inventory appraisals, machinery and equipment appraisals, projections, production volumes, capacity, etc… have been produced. Communications regarding such matters would have included the officers of Pinnacle and therefore included in the records previously produced by Plaintiffs.

29. Documents concerning a sale (whether actual or contemplated) of any of Pinnacle's, Polo Roads or Oracle's assets to Penny Plate.

Documents and communications with Penny Plate were all handled by Scott Dickman and were retained on the Pinnacle server or hard copies in the files which have been previously produced.

46. <u>Documents concerning any environmental reports, reviews, evaluations, studies, audits, and assessments of the facilities or land owned by Pinnacle, Polo Road or Oracle.</u>

Neither Pinnacle, Polo Road nor Oracle owned any land or real estate in 2012 and were not included in the fire sale to Centre Lane. The facilities and operations of Oracle were conducted in leased facilities. The land owner was AIC and copies of the leases and the environmental reports that were maintained were placed in the data room and have been produced. These are not relevant nor would they lead to admissible evidence on the issues in the case. There may be weekly monitoring reports from a groundwater monitoring station that was installed by RJR prior to our acquisition of the operations and were maintained by Oracle personnel as a normal practice in the ordinary course of business. Such reports were then submitted to the appropriate state agency in North Carolina. These would not be relevant nor would they lead to admissible evidence on the issues in the case. All other environmental reports *(Phase 1)* have been produced.

57. <u>Documents reflecting communications with any Defendant.</u>

The standard practice would be for such communications to be copied to at least one of the officers of Pinnacle and therefore have been produced. In the event there are any spurius communications, they would have been limited to communications with Chris Payne, Ernie Holley and Angela Meredith and only during the time frame May 15, 2012 – August 3, 2012 (three days after the initial breach of Defendant's agreement to acquire or purchase the Wells Fargo debt and the day that Defendant's terminated communications with Plaintiffs), but these would not be relevant nor would they lead to admissible evidence on the issues in the case. If there were communications without the knowledge of an officer of Pinnacle, the Defendant's should already have them.

4. To date, Plaintiffs have produced more than 22,000 electronic documents, several thousand pages of hard copies of files and documents and audio recordings and a cost from the IT provider in excess of $17,000.00. Further, Defendant's received from the Oracle data room all of the due diligence information available on Oracle during the summer of 2012 through August 11, 2012.

5. The search terms requested by Defendants have the time frame of September 1, 2011 to September 30, 2012. Running those items on Oracle's server would result in a massive production of items that are not relevant and require a substantial amount of time and resources to gather, review and produce. Pinnacle no longer owns Oracle and has no ability to ask for documents, communications or information that was generated after the date of the fire sale which was August 10, 2012. Based on my negotiations with Nathan Richey, who was the point man for Centre Lane in the negotiations, and the recipient of due diligence information, I strongly believe Pinnacle would not have been allowed to retain a copy of Oracle's electronically-stored information due to the proprietary nature of much of the information, patents, designs, customer contacts, etc. We did maintain the ability to secure needed information and data in the purchase and sale agreement, Section 6.14.

6. Oracle Flexible Packaging company is not a party to this pending litigation. The actual plaintiffs in this matter and their records, documents and information were housed in the Tulsa, Oklahoma office and on the computer servers located in Tulsa, Oklahoma. A full data search has been completed on the Pinnacle server and a significant amount data was produced to Defendant's as a result. Most of the information, the Defendant's requested was already in their possession since they and their counsel and investment advisors had full access to the electronic data room and numerous electronic communications with information and data attached during 2012 when the events took place. It is simply not reasonable nor justifiable for the Defendants to ask for copies of all correspondence and communications to which they were a party and a recipient. Such request can only be viewed as unduly burdensome.

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

10-1-2015
Date

J. Scott Dickman