**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PINNACLE PACKAGING | ) | |
| COMPANY, INC., | ) | |
| an Oklahoma corporation, | ) | |
| POLO ROAD LEASING, LLC, | ) | |
| an Oklahoma limited liability company, | ) | |
| and J. SCOTT DICKMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12-CV-537-JED-TLW |
| | ) | |
| vs. | ) | |
| | ) | |
| CONSTANTIA FLEXIBLES GmbH, an | ) | |
| Austrian corporation, and | ) | |
| ONE EQUITY PARTNERS (EUROPE) | ) | |
| GmbH, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is defendants' Motion for Protective Order. (Dkt. 111). Defendants'

motion asks the Court to quash a deposition notice, which defendants state seeks the depositions

of Thomas Unger, Chief Executive Officer of defendant Constantia Flexibles GmbH, and the

depositions of corporate representatives of Constantia and defendant One Equity Partners.

Defendants state that the notice sets the location of the depositions in New York City.[1] (Dkt. 111

at 1). Constantia and One Equity Partners have their principal places of business in Austria and

Germany, respectively, and Mr. Unger resides in Germany.

Defendants argue that before they can be required to produce their executives and/or

corporate representatives for depositions in the United States, plaintiff must show the presence of

---

[1] Neither party attached a copy of the notice to their pleadings; however, plaintiffs do not dispute
that they served the notice or that the notice requires the attendance of Unger and the corporate
representatives as stated by defendants.

". . . unusual circumstances that justify departure from the general rule that a deposition is to occur where the witness resides – a rule recognized by courts as especially important for witnesses residing outside of the U.S." Id. Defendants also argue that any need for the requested depositions to occur in the United States is a result of plaintiffs' own lack of diligence. Id. Plaintiffs respond that defendants have the burden to show the need for a protective order and that defendants have failed to meet that burden. (Dkt. 116 at 8-9). In addition, plaintiffs argue that the facts of this case and the law warrant requiring defendants' corporate witnesses to appear in New York City or, in the alternative, Miami, Florida, for their depositions. Id.

### Factual Background

Constantia has four locations in the United States.[2] (Dkt. 111 at 5-6). Through Jan Homan, its Chairman of the Board of Supervisors, Constantia initiated contact with plaintiffs regarding the business transaction that gives rise to this lawsuit.[3] (Dkt. 119 at 5-7). Thomas Unger, its CEO, took an extensive role in the negotiations that followed. Id. at 8-17. Unger, in addition to his role at Constantia, is the Chief Executive Officer of a company named Global Packaging USA Corporation, which is located in Miami, Florida.[4] There is no dispute that Constantia is an Austrian corporation with its principal place of business in Vienna, Austria and

---

[2] Plaintiffs state that Constantia has five locations in the United States. (Dkt. 111 at 5-6). Constantia actually has four locations in the United States and one location in Canada. See id.

[3] The relevant time period appears to be May 2012 through August 2012. (Dkt. 119 at 5-7).

[4] Unger submitted a declaration in which he states that he is not an officer of Global Packaging USA Corporation or any other U.S. corporation. (Dkt. 125-4). Notwithstanding these representations, BloombergBusiness identifies Unger as the Chief Executive Officer of Global Packaging USA Corporation:
http://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=5674485
(last visited on December 13, 2015, but visited on numerous occasions since the Court's hearing on defendants' motion). The same webpage identifies Global Packaging USA Corporation as having its headquarters in Miami, Florida. Id. For purposes of this Opinion and Order, the Court assumes that Unger is the current CEO of Global Packaging USA Corporation and that Global Packaging has its headquarters in Miami, Florida.

that Unger resides in Frankfurt, Germany. There is also no dispute that One Equity Partners is a German corporation with its principal place of business in Frankfurt, Germany.

The Court takes judicial notice of the fact that the time difference between the Northern District of Oklahoma and Germany and Austria is seven hours. Austria does not subscribe to the Hague Convention, at least in so far as it would apply to this case. Germany does.

**American Style Depositions in Germany and Austria**

According to the United States Consulate Office in Germany, American style civil litigation depositions may be taken in Germany. The following guidelines apply:

1. The deposition must occur at the United States Consular General grounds in Frankfurt, Germany and must be pre-approved by the German Ministry of Justice. The United States Consul must administer all oaths.

2. At least six weeks in advance of the deposition, the deposition notice must be provided to the Consulate Office and must include the deponent's name, German address and phone number, a brief description of the case, a proposed date for the deposition, and $1,283 for a scheduling fee. Once this information is received, the Consulate will contact the German government and request permission for the deposition to take place.

3. On the day of the deposition, the Consulate must be paid $50 for each oath administered, plus $309 for the first hour. If the Consular Officer is required to remain longer, an additional fee of $241/hour applies. The certification of the deposition is an additional $415.

4. Additional information regarding the identity of the deposition participants must be provided to the Consulate at least three days in advance of the deposition.

http://photos.state.gov/libraries/frankfurt/1020130/spahncx/DEPOSITION%20INSTRUCTIONS %202015.pdf (last visited December 6, 2015). This information is consistent with the affidavit of Karin Geissl, an attorney for Constantia and One Equity Partners, who is admitted to practice law in Germany and the State of California. She submitted a declaration, which states,

1. There is a practice to allow for U.S.-style depositions in Germany with regard to German nationals if the German Ministry of Justice is informed

3

and approves the deposition in advance, which in her opinion it usually does.

2.      The proper process for taking a deposition in Germany in cross-border dispute is set out at the website of the Consulate General of the United States in Frankfurt.

3.      In Geissl's opinion, the use of a court reporter and videographer during such deposition would be permissible, so long as all parties agree to it. The U.S. Consulate General's webpage specifically provides a list of court reporters, videographers and interpreters for U.S.-style depositions in Germany.

(Dkt. 125-3) (with some paraphrasing).

The United States Department of State, Bureau of Consular Affairs, provides the following information regarding depositions in Austria:

Austria is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters. Although Article XVIII of the Friendship, Commerce and Consular Rights Treaty and Supplementary Agreement between the United States of America and Austria (1928, 1931) included specific provisions about the taking of depositions of [sic] by consular officers of nationals of their own country or permanent residents, Austrian authorities have informed the U.S. Department of State and the U.S. Embassy in Vienna that voluntary depositions of willing witnesses may not be taken of Austrian citizens and that depositions of U.S. nationals or permanent residents can only be taken with specific permission of the Ministry of Foreign Affairs. Permission is not generally granted.

http://travel.state.gov/content/travel/en/legal-considerations/judicial/country/austria.html      (last visited December 6, 2015) (emphasis added). This information somewhat contradicts the affidavit of Bertram Bertscher, an attorney for Constantia and One Equity Partners, who is admitted to practice law in Austria. (Dkt. 125-2). She submitted a declaration, which states,

1.      The direct taking of evidence by foreign courts in Austria may be legitimate if prior permission of the Austrian Minister of Justice has been obtained.

2.      The Austrian Minister of Justice usually approves requests for permission for U.S. legal counsel to take evidence in Austria, including depositions, if it is supported by U.S. courts and the evidence is voluntarily given.

3. The use of a court reporter and videographer during the deposition would be permissible, so long as the parties agree to it.

(Dkt. 125-2) (with some paraphrasing). The Court chooses to rely on the information obtained from the United States Department of State.

### Christopher von Hugo

Although Christopher von Hugo is not identified by name in the notices (at least as described by the parties), plaintiffs allege that he represented One Equity and, possibly, Constantia, in the transaction that gives rise to this lawsuit and imply that he will be presented for deposition in New York City if defendants' Motion for Protective Order is denied. (Dkt. 116). Von Hugo was Vice Chairman of the Supervisory Board of Constantia from April, 2011 to April, 2013, and Chairman of the Supervisory Board of Constantia from November, 2010 to April, 2011, and from April, 2013 to March, 2015. Id.; (Dkt. 125-6). He is now employed by a non-party and resides in Frankfurt, Germany. (Dkt. 125-6). As of July 21, 2015, he had not travelled to the United States in the prior twelve months. Id.

One Equity admits that von Hugo "is the individual formerly affiliated with [One Equity] who would have the most knowledge regarding the allegations in the Complaint." (Dkt. 125-5). This statement is ambiguous. It could mean that Mr. von Hugo has more knowledge regarding the allegations in the Complaint than any current or former employee of One Equity, or it could mean that of those no longer employed by One Equity, von Hugo has the most such knowledge. Defendants themselves interpret this statement as meaning that he is "the only person affiliated with [One Equity] claimed to have had involvement with the allegations in the Complaint. . .." (Dkt. 125 at 7). In any event, although plaintiffs imply that if the Court denies defendants' motion, then defendants will bring von Hugo to the United States as a corporate representative, he cannot be compelled to come to the United States by this Court because he is a non-party who

resides outside the United States. Fed. R. Civ. P. 45(c). He also cannot be compelled to act as a corporate representative for defendants. Fed. R. Civ. P. 30(b)(6) (notes of Advisory Committee on Rules – 1970 Amendment).

Additionally, defendants imply that they will only be able to present the most knowledgeable person for deposition if they are not required to bring a corporate representative to the United States. Defendants seem to be saying that von Hugo will act as their corporate representative if the depositions are in Germany and Austria. Based on the record before the Court, however, the Court cannot conclude that von Hugo has made such a commitment, irrespective of where the corporate depositions are held. Moreover, defendants are obligated to produce a knowledgeable corporate representative, Sprint Communications Co. v. Theglobe.com, Inc. 236 F.R.D. 524, 527-28 (D.Kan. 2006) (company has duty to make conscientious and good faith effort to designate knowledgeable persons and to prepare those persons to answer questions fully and unevasively), and defendants have cited no authority for the proposition that if a former employee is willing to testify (which is not established here) as a corporate representative at the corporation's principal place of business, but is not willing to travel to a foreign location, the Court should weigh that fact in favor of holding the deposition at the principal place of business.

Based on the foregoing, facts related to von Hugo's availability to appear for a deposition in the United States, Germany, or Austria are not relevant to the Court's inquiry here. Von Hugo's involvement and connection with the United States on behalf of defendants in the transaction which gives rise to this lawsuit may, however, be relevant for the purpose of determining whether either defendant should be required to produce a corporate witness in the United States. This issue is addressed below.

**Analysis**

It is clear that a foreign corporation, subject to the *in personam* jurisdiction of a federal court, can be ordered under Federal Rule of Civil Procedure 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony. See, e.g., Work v. Bier, 106 F.R.D. 45, 52 (D.D.C. 1985). In Bier, the plaintiff noticed the depositions of a number of foreign defendants. Id. at 47. The depositions were scheduled to take place in the United States Embassy in Bonn, West Germany. See id. The defendants moved to quash the plaintiff's deposition notice, arguing that the taking of depositions in Germany is a judicial function, not a private one and that proceeding without the participation or consent of the officials of West Germany violated the Hague Convention. See id. Plaintiff then noticed the deposition of three defendants, previously noticed for West Germany, to take place in Washington D.C. See id. The Court found that the Hague Convention applied to the taking of the depositions of the foreign defendants in West Germany, even if the court could exercise *in personam* jurisdiction over those defendants. See id. at 48-49. However, the court also determined that it could order that the deposition be taken in the United States, in which case the Hague Convention would not apply. See id. at 50-51. The Court adopts Bier as a correct statement of the law.

There is no dispute that the Court has personal jurisdiction over defendants. Thus, the Court has authority to order defendants to produce their corporate witnesses in the United States for depositions. The question is whether the Court will do so.

In 2012, the United States Bankruptcy Court for the District of South Carolina summarized well the law applicable here:

> [T]he Federal Rules of Civil Procedure [do not] specify where a deposition is to take place. Rule 30 governs oral depositions and specifies that reasonable written notice must be given to every other party and "must state the time and place of the deposition." Rule 30(b)(1). Rule 26(c), which governs motions for

7

protective orders, states that a "court may, for good cause, issue an order to protect a party or person from ... undue burden and or expense," including "specifying terms, including time and place, for the disclosure or discovery." Rule 26(c)(1)(B). Rules 30(b) and 26(c) act in concert, as "the examining party may set the place for the deposition of another party wherever he or she wishes subject to the power of the court to grant a protective order under Rule 26(c)(1)(B) designating a different place." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2112 (3d ed. 2012). Courts are accordingly given broad discretion to manage discovery and make discovery rulings. See United States v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir.2002) ("We afford substantial discretion to a district court in managing discovery...."); Botkin v. Donegal Mut. Ins. Co., 2011 WL 2447939 at *8 (W.D.Va. June 15, 2011) ("Courts have broad discretion to determine the appropriate location for a deposition.") (citing Armsey v. Medshares Mgmt. Servs., Inc., 184 F.R.D. 569, 571 (W.D.Va.1998)).

Generally, a plaintiff, by choosing the forum in which an action is brought, will be required to make himself or herself available to be deposed in the forum district. See In re Outsidewall Tire Litig., 267 F.R.D. 466, 471 (E.D.Va.2010); Wright & Miller, supra, § 2112 ("Ordinarily, plaintiff will be required to make himself or herself available for examination in the district in which suit was brought."). On the other hand, "a non-resident defendant ordinarily has no say in selecting a forum," and thus "an individual defendant's preference for a situs for his or her deposition near his or her place of residence—as opposed to the judicial district in which the action is being litigated—is typically respected." In re Outsidewall Tire Litig., 267 F.R.D. at 471; see also Wright & Miller, supra, § 2112 ("[C]ourts are more willing to protect defendant from having to come to the forum for the taking of his or her deposition than they are in the case of plaintiffs."). The same general rule that applies to depositions of individual defendants also applies to corporations, in that a deposition of a defendant corporation through its officers is to take place at the corporation's principal place of business or where the officers reside. Connell v. Biltmore Sec. Life Ins. Co., 41 F.R.D. 136, 137 (D.S.C.1966); Wright & Miller, supra, § 2112 (citing cases). These general rules create "an initial presumption that a defendant should be deposed in the district of his residence or principal place of business." Armsey, 184 F.R.D. at 571 (citing Turner v. Prudential Ins. Co. of Am., 119 F.R.D. 381, 383 (M.D.N.C.1988)); see also Farquhar v. Shelden, 116 F.R.D. 70, 72 (E.D.Mich.1987) ("[C]ourts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum.") (citing Work v. Bier, 107 F.R.D. 789, 792 (D.D.C.1985)).

In re Joseph Walker & Co., 472 B.R. 696, 700 (Bankr. D.S.C. 2012) (with slight modifications to the citation format). Thus, the initial presumption is that the depositions of defendants' corporate representatives are to occur in Germany and Austria, where they have their principal places of

business and where Unger resides. The next question is whether plaintiffs have overcome this presumption.

In this regard, the court in <u>Joseph Walker</u>, uses language on which defendants rest most of their argument:

> To overcome the presumption that a defendant should be deposed where he or she resides or at its principal place of business, circumstances must exist "distinguishing the case from the ordinary run of civil cases." <u>In re Outsidewall Tire Litig.</u>, 267 F.R.D. at 472 (citing <u>Salter v. Upjohn Co.</u>, 593 F.2d 649, 651–52 (5th Cir.1979)). Moreover, "the plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the Court to suspend the general rule" of holding depositions where defendants are located. <u>Sloniger v. Deja</u>, No. 09–CV–858S, 2010 WL 5343184, at *4 (W.D.N.Y. Dec. 20, 2010) (citation omitted).

<u>Id.</u> This language originates in the Fifth Circuit with <u>Salter v. Upjohn</u> (cited by <u>Joseph Walker</u> above), a case in which the court upheld a district court decision to prohibit the deposition of the defendant's president in the forum district. <u>Salter</u>, 593 F.2d at 651-52. The Court has found no negative treatment of the Fifth Circuit's conclusion and has found a number of cases that cite it favorably.[5] These cases include: <u>In re Outsidewall Tire Litigation</u>, 267 F.R.D. 466, 472 (E.D. Va. 2010) ("To be sure, this presumption may be overcome, but only where circumstances exist distinguishing the case from the ordinary run of civil cases."); <u>Tailift USA, Inc. v. Tailift Co., Ltd.</u>, 2004 WL 722244 *1 (N.D.Tex. 2014) (can overcome presumption by showing "peculiar" circumstances)[6]; and, <u>Zuckert v. Berkliff Corporation</u>, 6 F.R.D. 161, 161 (N.D. Ill. 1982) ("If a

---

[5] Although Westlaw identifies a handful of cases purporting to treat <u>Salter</u> negatively on this issue, the Court's review of those cases revealed nothing that contradicted or disagreed with <u>Salter</u> on this point.

[6] The district court, in <u>Taillift</u>, went so far as to find that the presumption alone satisfies the "good cause" requirement contained in Rule 26. <u>Tailift USA, Inc. v. Tailift Co., Ltd.</u>, 2004 WL 722244 *2 (N.D.Tex. 2014) ("Courts have determined that this presumption satisfies the Rule 26(c) requirement of good cause.") (citing <u>Chris–Craft Indust. Prod., Inc. v. Kuraray Co., Ltd.</u>, 184 F.R.D. 605, 607 (N.D.Ill.1999)). No other court seems to have adopted such a clear rule, notwithstanding the court's use of the phrase, "Courts have determined."

corporation objects to depositions at a location other than its principal place of business, the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation.") (citing <u>Grey v. Continental Marketing Associates</u>, 315 F. Supp. 826, 832 (N.D.Ga.1970)).

Plaintiffs, on the other hand, argue that the burden is on defendants to show good cause for the issuance of a protective order. Plaintiffs cite <u>Sentry v. Shivers</u>, 164 F.R.D. 255 (D.Kan. 1996). In <u>Sentry</u>, the defendant sought a protective order to prevent the plaintiff insurance company from deposing him because he had already provided plaintiff with an examination under oath. <u>Id.</u> at 256-67. The Court found that such an examination did not constitute a "deposition," and, therefore, the defendant had failed to show good cause. The issues in <u>Sentry</u> were too dissimilar to be helpful here, where defendants seek the application of a generally accepted rule regarding the location of corporate depositions.

Next, plaintiffs cite <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 102, n.16, 101 S.Ct. 2193, 68 L.Ed. 693 (1981). In <u>Gulf Oil</u>, the Supreme Court considered whether the parties, in a class action lawsuit, should be prohibited from contacting potential class members. The Supreme Court reasoned that,

> an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23.

<u>Id.</u> at 2200-01. It was in this context that the Supreme Court footnoted a D.C. Circuit case which quoted Wright and Miller for the proposition that to establish good cause for a protective order "[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." <u>Id.</u> at n.16. For the same reason that <u>Sentry</u> is

unhelpful, so is <u>Gulf Oil</u>. Moreover, defendants have done more than make stereotyped and conclusory statements and for this additional reason, <u>Gulf Oil</u> is not helpful.

Plaintiffs rely on <u>In re Honda America Motor Co.</u>, 168 F.R.D. 535 (D. Md. 1996), as a case that addresses the issue presently before the Court. In <u>Honda</u>, the defendant sought a protective order preventing the plaintiff from deposing its corporate representatives in the United States. <u>Id.</u> at 537. The defendant argued that international comity required the court, in its discretion, to order the depositions to be held in Japan and to be governed by Japanese discovery rules and procedure. <u>Id.</u> In fact, the defendant argued that the depositions should occur in Japan precisely because doing so would prevent the plaintiff from conducting a U.S. style deposition:

> Honda Japan points out that Japan generally disdains the United States' system of open discovery and compulsory depositions. As evidence, Honda refers to the Japanese system which requires judicial officers to conduct pre-trial questioning of witnesses. It also notes that Japan has refused to sign the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, and has restricted discovery within its territory pursuant to the Consular Convention and Protocol, 15 T.I.A.S. 768, 795, to voluntary depositions only. Second, Honda asserts that Japanese nationals would consider a compulsory deposition in the United States deeply offensive and embarrassing, and a violation of their cultural and social norms.

<u>Id.</u> at 537-38. The court rejected the argument for two reasons. First, the court determined that Japanese sovereignty was not implicated by holding corporate depositions of deponents who frequently travel to the U.S. on U.S. soil. Second, requiring the depositions to be held in Japan would infringe on American sovereignty because the lawsuit involved the United States' antitrust laws, laws that have long been viewed as cornerstones of American economic policy, and because it would be unfair to constrain the plaintiffs to obtaining discovery under Japan's restrictive procedures while at the same time giving the defendant "free reign" under the Federal Rules of Civil Procedure. <u>Id.</u> at 539. The court also relied on the fact that the travel costs would be far less if the depositions were held in the United States and the delay would be far more if the

depositions were held in Japan. Id. at 540. In short, although the court did not use the same language as Salter, it clearly found particular circumstances that differentiated the case from the ordinary run of the mill case where a plaintiff wants to depose a corporate witness away from the corporation's principal place of business. Moreover, unlike in Honda, defendants are not trying to avoid a U.S. style deposition; they are simply attempting to avoid travelling to the United States for the deposition. Thus, the arguments considered by the Court in Honda were very different than those made by defendants and, as a result, the reasoning in Honda is not helpful to plaintiffs here.

Plaintiffs also complain that defendants have failed to cite any Tenth Circuit law, arguing that defendants rely solely on Joseph Walker. As the Court has discussed, the proposition urged by defendants is accepted by many federal courts, has not been specifically rejected by any, and has application here. In fact, in all of the cases cited by plaintiffs, and those reviewed by the Court, in which a corporate defendant was required to produce a corporate witness away from its principal place of business, whether or not the deciding court used the language of Salter, unusual circumstances were present that caused the court to depart from the presumption (which is really more of a general rule than a presumption). Thus, the Court finds that the Tenth Circuit would likely adopt the statements of the law in Joseph Walker.

To summarize, the Court finds that determining the location of the deposition of a corporate witness is a fact intensive inquiry that begins with the general rule that the deposition is to occur in the forum where the defendant has its principal place of business and ends with an analysis of a number of factors to determine whether the necessary facts exist to distinguish the case from the "ordinary run of civil cases" such that "peculiar circumstances" exist to compel the Court to suspend the general rule. Factors considered by courts in conducting this analysis

include: the location of counsel for the parties, the number of corporate representatives to be deposed, the likelihood of significant discovery disputes and the Court's ability to resolve those disputes, whether the persons to be deposed often travel for business purposes, a balancing of the equities, issues of comity/Federal Rule of Civil Procedure 28(b), and the relative costs of the depositions. See Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 629 (C.D. Cal. 2005) (citing Armsey v. Medshares Mgmt. Servs., 184 F.R.D. 569, 571 (W.D.Va.1998); Resolution Trust Corp. v. Worldwide Ins. Management Corp., 147 F.R.D. 125, 127 (N.D.Tex.1992)); S.E.C. v. Banc de Binary, 2014 WL 1030862 (D.Nev. March 14, 2014) (unpublished).

**Location of Counsel for the Parties**

This factor is less relevant to the analysis in this case because plaintiffs seek to hold the depositions in New York City, which is not in this forum. (Dkt. 116). However, lead counsel for defendants is located in New York City, so plaintiffs' chosen location would be more convenient for defendants' counsel than the forum or defendants' principal places of business. This factor weighs slightly in favor of having the depositions in New York City.

**Number of Corporate Representatives to be Deposed**

Plaintiffs seek to take the depositions of Unger and a corporate representative from each defendant. (Dkt. 111, 116). At the hearing, the parties acknowledged that the number of topics to be addressed in the Rule 30(b)(6) depositions had not yet been finalized. (Dkt. 134, Hearing on Motion, Laurence Pinkerton and John Russell). As part of the discovery process, plaintiffs identified thirty-six topics, and the parties agreed to defer discussions of those topics until the question of the location of the depositions is resolved. Id. Counsel for defendants advised the Court that until the parties reach agreement on the topics, defendants could not determine how many witnesses would be necessary. (Dkt. 134, Hearing on Motion, John Russell and Cheryl

13

Howard). This agreement does not assist defendants' position on their motion because the evidence before the Court establishes only that there will be three depositions (Unger and a representative for each defendant). The Court will not speculate regarding the number of additional corporate witnesses that defendants may present. Bringing three corporate representatives to the United States is not overly burdensome for defendants, which have significant contacts with and business in the United States. Nonetheless, this factor does not present any unusual or peculiar circumstances that weigh against applying the general rule.

### The Likelihood of Significant Disputes Arising During the Depositions and the Court's Ability to Resolve those Disputes.

A Scheduling Order was entered in January 2015 and an Amended Scheduling Order in March 2015. (Dkt. 93, 98). The Court has resolved three motions to compel since (dkt. 101, 103, 114, 147). Plaintiffs contend that the results of the previous motions to compel demonstrate that defendants are not willing to comply fully with the rules of discovery. At the hearing, defendants argued that discovery disputes during the Rule 30(b)(6) depositions are unlikely based on the parties' recent completion of the deposition of plaintiff J. Scott Dickman without any disputes. (Dkt. 134, Hearing on Motion, John Russell). Of course, depositions of corporate representatives tend to be more contentious because a representative's answers are binding on the corporation. Nonetheless, based on the Court's experience with the parties and knowledge of its counsel, the Court believes the parties will successfully resolve any disputes that do occur, whether the depositions take place in the United States or Europe.

As to the Court's ability to resolve any discovery disputes, the seven-hour time difference certainly presents some difficulty when compared to the one-hour time difference of New York City. However, the Court is not opposed to making itself available on the afternoon of each

deposition (the morning in the United States) to resolve any disputes that have arisen during the day.

Accordingly, the Court finds that this factor does not present any peculiar circumstance weighing in favor conducting the depositions in New York City.

### Whether the Persons to be Deposed Often Engage in Travel for Business Purposes

Both Cadent and Banc de Binary interpret this factor as a requirement that the Court determine whether the deponents travel to the proposed location of the depositions, rather than a general determination of whether the deponents travel for business generally. See Cadent, 232 F.R.D. at 630 (citing Turner v. Prudential Ins. Co. of America, 119 F.R.D. 381, 382 (M.D.N.C. 1988)); Banc de Binary, 2014 WL 1030862 at *7. Both courts considered whether the parties "reached into the forum to conduct business." Banc de Binary, 2014 WL 1030862 at *7 (citation omitted).

Mr. Unger submitted a declaration in which he states that he does not, as of July 21, 2015, have any trips planned to the United States for the remainder of 2015. (Dkt. 125-4). Mr. Unger also states that he does not frequently visit Constantia's American subsidiaries and that "there is a separate executive board member for the North American entities." Id.

The Third Amended Complaint contains a detailed account of the allegations that form the lawsuit, including the time and place of meetings between the parties. (Dkt. 119). In the Third Amended Complaint, plaintiffs allege that Unger traveled to the United States only once as part of the negotiations. Id. That meeting took place in Houston, Texas, because it was convenient to the parties, including Unger, who was traveling from Mexico. Id. All of Mr. Unger's other contacts with plaintiffs occurred over the telephone or through written correspondence. Id. Accordingly, plaintiffs have not established that Unger frequently travels to

New York City for business.

Plaintiffs have established, however, that Unger is the CEO of Global Packaging USA Corporation in Miami, Florida. That company appears to be unaffiliated with the defendants in this case and, without more (particularly in light of Unger's declaration), is not sufficient to establish that Mr. Unger travels to Miami, Florida, or New York City to conduct business.

There is no evidence that any person who would be designated a corporate representative for Constantia regularly travels to the United States. For the Constantia Rule 30(b)(6) deposition(s), then, this factor does not present any peculiar circumstance weighing in favor of conducting the deposition(s) in New York.

Dunja Mauser, One Equity Partner's Office Manager, submitted a declaration in which she states that One Equity Partners does not have any employees in the United States and that if depositions were ordered to take place in the United States, a One Equity Partners employee based in Frankfurt, Germany would need to travel for the deposition. (Dkt. 125-5). She further states that Christopher von Hugo is a former One Equity Partner Europe employee who currently lives and works in Frankfurt, Germany. Id. Von Hugo also submitted a declaration stating that he lives and works in Frankfurt, Germany, and currently has no plans to visit the United States. (Dkt. 125-6). The Third Amended Complaint states that von Hugo came to the United States once during the course of events that form the basis of the litigation. (Dkt. 119). He visited Oracle's facility in Winston-Salem, North Carolina. Id. All other contacts and negotiations were conducted either by telephone or written correspondence. Id. This factor does not present any peculiar circumstance weighing in favor of conducting the One Equity deposition(s) in New York City.

**Balance of Equities**

This factor requires the Court to consider "the equities with regard to the nature of the claim and the parties' relationship." Cadent, 232 F.R.D. at 629. In Banc de Binary, the district court found that the equities favored holding the depositions in the United States because the defendant, a foreign corporation, had advertised itself as a United States-based corporation. See Banc de Binary, 2014 WL 1030862 at *7-8. The court concluded that the defendant was equitably estopped from claiming the right to hold the depositions in its home country after claiming the opposite to its investors. See id.

In this case, defendants have made no such representations. As defendants' counsel correctly pointed out at the hearing, plaintiffs have always known that defendants are foreign corporations. (Dkt. 134, Hearing on Motion, Cheryl Howard). In fact, plaintiffs contemplated early on in the litigation that depositions would be held in Germany and Austria. On April 2, 2015, plaintiffs' counsel emailed defendants' counsel stating,

> I do not think it is too early to begin to set depositions of key witnesses in this case, because at present we expect certain of them will have to be in Europe, though advice from you may affect that and affect scheduling. In addition, it appears there will be a lengthy delay on documents. The individuals whom we expect to depose between August 1 and September 11 are: Richard Kelsey, Christopher von Hugo, Thomas Unger, and Jan Homan. If there is a required trip to Europe, I presume that we will schedule all of these individuals seriatim though there may be travel between Frankfurt and Vienna. Please promptly advise concerning these matters so that an agreement can be reached that will allow the Defendants plenty of time to arrange their schedules.

(Dkt. 111-1).

As of April 9, 2015, defendants had not provided the addresses of their potential foreign witnesses. (Dkt. 116-1 at 30). However, defendants did provide the city of residence for these witnesses. On April 21, 2015, defendants agreed to accept deposition notices for Constantia's current employees. Defendants confirmed this agreement by email on April 23, 2015, an email in

which they provided addresses as requested:

> As discussed on our call on Tuesday, and in the spirit of cooperation, below please find the telephone numbers and addresses for the Constantia witnesses in Europe that were listed on our Initial Disclosures, as well as Christopher von Hugo, all of whom we represent. . .. [W]e can accept deposition notices for the Constantia individuals listed below, although our agreement to accept the deposition notices does not affect any foreign law requirements for taking a deposition in Austria with which Plaintiffs must comply.

(Dkt. 125-1 at 5).

On May 22, 2015, defendants provided the dates of birth of their foreign witnesses. (Dkt. 116-1 at 31.) On June 5, 2015, plaintiffs informed defendants that they intended to notice the depositions at issue here for New York City. Id. On June 12, 2015, plaintiffs served notices for the deposition of Unger and a corporate representative of One Equity. Id. at 32. On June 15, 2015, plaintiffs served notices for the deposition of Constantia's corporate representative. Id. On June 18, 2015, defendants agreed to waive service of deposition notices on their foreign witnesses who are currently employed by defendants. (Dkt. 111.)

These facts do not demonstrate that defendants have taken contrary positions outside and inside the litigation with respect to their contacts with the United States. In addition, the facts demonstrate that defendants are cooperating with plaintiffs to ensure that any burden or delay in the depositions is due to the procedures required by the foreign countries themselves and not due to any actions by defendants. Accordingly, this factor does not present any peculiar circumstances that weigh in favor of holding the depositions in New York City.

### Issues of Comity/Federal Rule of Civil Procedure 28(b)

When depositions for cases filed in the United States are held in foreign countries, the parties must be sure to comply with the requirements of those countries or risk offending the sovereignty of those nations. See Banc de Binary, 2014 WL 1030862 at *4. "If a federal court

compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated." In re Honda American Motor Co., Inc. Dealership Relations Litigation, 168 F.R.D. 535, 538 (D.Md. 1996) (citing In re Anschuetz & Co., 754 F.2d 602, 608 n. 13 (5th Cir. 1985)). See also Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336 (N.D.Ind. 2000) (same).

> Federal Rule of Civil Procedure 28(b) provides, in pertinent part, that
>
> (1) *In General.* A deposition may be taken in a foreign country:
>
> (A) under an applicable treaty or convention;
> (B) under a letter of request, whether or not captioned a "letter rogatory";
>
> (C) on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination; or
>
> (D) before a person commissioned by the court to administer any necessary oath and take testimony.

Fed. R. Civ. P. 28(b)(1). The evidence before the Court indicates that Germany is amenable to depositions that conform to the requirements of Rule 28(b). The evidence indicates that Austria is not.

As to Austria, a number of the cases cited by plaintiffs touch this issue. In Schindler Elevator Corp. v. Otis Elevator Co., 657 F.Supp.2d 525 (D.N.J. 2009), the District of New Jersey considered whether ". . . a party seeking to take a deposition of a Swiss corporate defendant must comply with the Hague Convention or may it simply follow the Federal Rules of Civil Procedure." Id. at 527. The court noted that "[i]n order to compel application of the Hague Convention over the Federal Rules, the party seeking to apply the Convention procedures bears the burden to show that the 'particular facts, sovereign interests, and likelihood [of resorting to Hague procedures] will prove effective.'" Id. at 528-29. Although many of the factors considered

by the court are not applicable here, before the Court will require plaintiffs to pursue depositions in Germany or Austria, it must be convinced that doing so will likely prove fruitful. The Court is convinced that plaintiff will be able to obtain depositions of One Equity's corporate witnesses and Unger in Germany. The guidance provided by the United States' State Department indicates that such efforts in Austria are not likely to be fruitful.

Likewise, in Triple Crown America, Inc. v. Biosynth AG, 1998 WL 227886 (E.D. Penn. April 30, 1998) (unpublished), the district court considered, inter alia, whether the deposition of a Swiss corporate defendant should occur in the forum or in Switzerland. In finding that the deposition should occur in the forum, the court reasoned:

> [I]t appears that it would be difficult if not impossible for plaintiff to secure depositions of Biosynth AG in Switzerland in a manner as prompt, efficient and effective as that contemplated by the Federal Rules of Civil Procedure. The United States has an "overriding interest" in promoting the prompt and efficient resolution of litigation in its courts. Plaintiff represents and defendant does not dispute that Swiss law places substantial restrictions on the conduct of discovery, including criminal sanctions against an attorney who attempts to take sworn discovery in that country for use in foreign litigation even from a consenting party.

Id. at *3.

As to Germany, in light of the travel time involved for executives of One Equity and Unger, conducting their depositions in New York City will not be substantially more efficient or prompt than doing so in Germany, and conducting the depositions in Germany will be as effective. The same cannot be said of Austria, which disfavors such depositions in the first instance and does not generally grant requests for United States-style depositions. As a result, obtaining depositions in Austria will almost certainly be substantially less efficient than conducting those depositions in New York City. Moreover, the fact that Austria disfavors such depositions and does not generally grant permission for them to be conducted means that they

20

may not occur at all.

This factor presents peculiar circumstances that weigh heavily in favor of conducting Constantia's deposition(s) in New York City. It does not present such circumstances with regard to One Equity and Unger.

### Cost of Depositions/Federal Rule of Civil Procedure 1

Wright and Miller provides that in assessing the location of a deposition, "[a]n important question in determining where to hold the examination is the matter of expense." Charles Allen Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2112 at 84 (1994 rev.) (footnotes omitted). Additionally, Federal Rule of Civil Procedure 1 defines the purpose and scope of the rules and provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Plaintiffs contend that taking a deposition in Austria will require a letter rogatory, which they believe will cost $2,325.00 in fees, plus the cost of an interpreter for the deposition, and transcript translation costs of $60-$85/page. (Dkt. 116-1). With respect to the process of taking a deposition in Germany, plaintiffs rely on documents from the American Consulate General indicating that there is a $1,283.00 scheduling fee, a $50.00 oath fee, a $309.00 fee for the first hour of the deposition and $231.00/hour for each hour thereafter in which a Consular Officer is needed, and a $415.00 fee for providing the seal and certification along with additional fees for an interpreter, court reporter, and transcript interpreter. Id. The scheduling fee in Germany must be paid at least six weeks in advance of the deposition; any change in schedule results in an additional fee of the same amount, and the deposition date is not entirely within the parties' control. Id.

Thus, if the depositions are held in New York City, plaintiffs' counsel will be required to travel approximately 1,400 hundred miles from Tulsa, defendants' counsel will not be required to travel at all, and three corporate representatives will be required to travel approximately 4,000 miles from Germany and/or Austria for a total of 13,400 miles of travel. If the depositions were to occur in Europe, plaintiffs' counsel would travel approximately 5,000 miles and defendants' counsel would travel approximately 4,000 miles, with an additional 350 miles between Germany and Austria for a total of 9,700 miles of travel. Weighing in defendants' favor, however, is the fact that they will not only incur direct out-of-pocket costs associated with sending employees to the United States, they will also incur indirect costs resulting from unplanned travel to the United States and time out of the office.

Given the information provided by the parties, the Court is unable to determine whether the total cost of conducting the noticed depositions is greater if the depositions are conducted in Germany and Austria or greater if the depositions are conducted in the United States. Travel costs and the number of witnesses and lawyers will be determinative. The Court is able to determine; however, that the cost to plaintiffs is greater if the depositions are conducted in Europe and the cost to defendants is greater if the depositions are conducted in the United States. However, if the Court were to hold that the depositions should take place in New York City, the Court has the discretion to order plaintiffs to bear the costs of defendants' travel. See Banc de Binary, 2014 WL 1030862 at *10.

However, if Constantia's deposition(s) is conducted in New York, some travel time in Europe will be reduced, but Constantia will be required to send one or more corporate representatives to New York. Defendant has counsel in New York, and the Court assumes the deposition would be scheduled either on the way to, or back from, the depositions in Germany.

Thus, the added travel time and expense for counsel is nominal.

On balance, this factor does not present any peculiar circumstances that weigh in favor of conducting the depositions in New York City. This conclusion is due in part to defendants' representation that they will have only one American lawyer attend the depositions on their behalf.

**CONCLUSION**

As to One Equity and Unger, the Court finds no peculiar circumstances that warrant departure from the general rule. Thus, One Equity's and Unger's Motion for Protective order is GRANTED. As to Constantia, the Court finds that any effort by plaintiffs to obtain a deposition that complies with the Federal Rules of Civil Procedure in Austria is likely to be unsuccessful and/or fraught with delay and unnecessary expense. At a minimum, peculiar circumstances are present which warrant departure from the general rule. Constantia's Motion for Protective Order is, therefore, DENIED.

The parties are directed to work cooperatively to obtain the depositions of Unger and the corporate representatives of One Equity and Constantia in a manner which results in the least expense to all parties. In addition, if either party requests that the Court be available to resolve disputes during the corporate depositions, the parties shall provide the Court with the date and time of each deposition as soon as it is known. Defendants shall bear the burden and expense of making the necessary arrangements for a telephone hearing with regard to the European depositions, and plaintiff shall bear such burden and expense for the New York City depositions. Any conference call between the Court and the parties will occur at or after 8 a.m. in the Central Time Zone.

SO ORDERED this 17th day of December, 2015.


T. Lane Wilson
United States Magistrate Judge